UNITED STATES, Appellee

v.

Christopher A. SMITH, Senior Airman
U.S. Air Force, Appellant.

No. 67671.
CMR No. S28574.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 3, 1996.

Decided Sept. 18, 1996.

For Appellant: *Captain Marge A. Overly* (argued); *Lieutenant Colonel Joseph L. Heimann* (on brief); *Colonel Jay L. Cohen, Major George F. May, Captain Eric N. Eklund.*

For Appellee: *Major John H. Kongable* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on brief).

## Opinion of the Court

EVERETT, Senior Judge:

This special court-martial conviction at Wright–Patterson Air Force Base, Ohio, is before us for a second time. The first time— after the Court of Military Review (now Court of Criminal Appeals) had affirmed the approved findings (larceny of a computer system that was military property valued at over $100.00, *see* Art. 121, Uniform Code of Military Justice, 10 USC § 921) and sentence (bad-conduct discharge and reduction to the lowest enlisted grade)—we set aside the decision below and returned the record for a limited hearing to resolve an issue of multiple representation. 36 MJ 455 (1993). *See generally United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967) ("ordering factfinding hearing on claims of unlawful command influence"). 36 MJ at 457.

Subsequently, that hearing was held, at which the military judge found that there had been "multiple representation" but no "actual conflict of interest"; further, even if there had been a conflict, appellant had "expressly waived" any objection to it that he may have had; and finally, in any event, a conflict, if it existed, "did not adversely affect" defense "counsel's representation of the appellant."

Thereafter, the then-Court of Military Review again affirmed the findings and sentence. In doing so, that court disagreed with the military judge's legal conclusion that appellant's defense counsel had had no conflict of interest, but it agreed that "appellant knowingly and intelligently [had] waived his right to conflict-free counsel." 39 MJ 587, 591 (1994).

In due course, we granted appellant's petition to review that holding. The granted issue was worded by appellant specifically as follows:

> WHETHER THE TRIAL DEFENSE COUNSEL HAD A CONFLICT OF INTEREST, THAT APPELLANT DID NOT WAIVE, THAT ADVERSELY AFFECTED HIS REPRESENTATION OF APPELLANT BY PREVIOUSLY REPRESENTING A SERGEANT LAWRENCE.

This issue is a mixed question of law and fact and, thus, is reviewed *de novo* by us. *See Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *United States v. Sullivan,* 42 MJ 360, 363 (1995); *see also United States v. Cordes,* 33 MJ 462, 466 (CMA 1991), citing *United States v. Scott,* 24 MJ 186 (CMA 1987) (issue of ineffective assistance of counsel "is ultimately a question of law"). Now, after full consideration of the original record of trial, the record of the *DuBay* hearing, and the latest opinion below, we hold that appellant knowingly and intelligently waived his counsel's conflict of interest.

The facts underlying the issue before us are concisely and completely set out in the opinion below following the *DuBay* proceeding. 39 MJ at 589–90. We will not reiterate them here, but we will refer to them as necessary and appropriate.

The stepping-stone questions inherent in the granted issue are these: Was there multiple representation? If so, did it give rise to an actual conflict of interest? If so, did appellant knowingly and intelligently waive his right to conflict-free counsel? If not, did the conflict have no adverse effect on counsel's representation of appellant? *United States v. Smith,* 36 MJ at 457; *see Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).

As to the first, it now is uncontroverted that there was multiple representation. Appellant's trial defense counsel also had represented Sergeant Lawrence earlier in connec-

tion with misconduct that related to appellant and that came to light through appellant's cooperation with law enforcement authorities. This representation culminated in nonjudicial punishment under Article 15, UCMJ, 10 USC § 815, for Sergeant Lawrence on May 15, 1991, and active representation terminated when Sergeant Lawrence decided not to appeal that punishment on or before May 20. 39 MJ at 589.

◼ Although defense counsel's active representation on behalf of Sergeant Lawrence ended shortly before appellant's charges were referred to court-martial and he was appointed to represent appellant, we also agree with the court below that the multiple representation posed an actual conflict of interest for counsel. 39 MJ at 591. Summarizing appellant's argument as to existence of this conflict, Judge Young wrote for the Court of Military Review:

> He asserts that Captain C did have a conflict of interests because appellant and Sergeant Lawrence each furnished, in large part, the pivotal evidence against the other. Appellant believes his counsel could have cross-examined Sergeant Lawrence effectively about his misuse of government property and his bias against appellant for assisting the AFOSI [Air Force Office of Special Investigations] in exposing his criminal conduct, but abandoned the opportunity to do so to avoid the conflicts issue. Appellant contends that the conflict was so obvious the prosecution suggested stipulating to Sergeant Lawrence's testimony to avoid the conflict problem.

39 MJ at 590. Evaluating the evidence in this regard, the court concluded:

> While there is no evidence to support a belief that appellant and Sergeant Lawrence acted in concert or pursuant to a conspiracy, their cases are inextricably intertwined. Sergeant Lawrence was the main witness against appellant on the larceny offense and had himself provided appellant with government software without proper authority. Appellant, in an undercover operation, collected the crucial information which resulted in Sergeant Law-

rence being punished under Article 15, UCMJ. If Sergeant Lawrence had testified, the defense counsel would have had to vigorously contest his veracity and try to establish his motive to misrepresent.

39 MJ at 591. We agree with these views; and we make some further observations.

First, even though Sergeant Lawrence had accepted nonjudicial punishment, he remained legally vulnerable to court-martial for his misconduct. *See* Art. 15(f); para. 1e, Part V, Manual for Courts–Martial, United States (1995 ed.); *see also* RCM 907(b)(2)(D)(iv), Manual, *supra.* As the Court of Military Review's opinion implied, had Sergeant Lawrence testified at appellant's court-martial, aggressive and effective cross-examination might have been quite damaging to him and conceivably could have led to a subsequent decision to refer charges against Sergeant Lawrence to a court-martial. Accordingly, it cannot accurately be said that appellant's defense counsel had no lingering professional interest in, or responsibility for, the continued well-being of Sergeant Lawrence.

Second, although Sergeant Lawrence in fact did not testify against appellant and, instead, offered evidence through a stipulation of fact, that does not placate our concerns just expressed. Defense counsel testified at the *DuBay* hearing that he entered into the stipulation to mitigate the damage that Sergeant Lawrence might do to appellant as a live witness, rather than to avoid having to cross-examine his former client. He also testified, however, that he was "not sure whether there would have been a potential area of Sgt Lawrence's activities, which were not relevant to the case or would not have at that point in time really impeached his credibility, which I may not have gone into" had Sergeant Lawrence been put on the stand by the prosecution in the absence of a stipulation of fact. Indeed, by letter to defense counsel, trial counsel had proposed the stipulation as a means of handling the conflict issue. In this full context, the stipulation of fact in lieu of live testimony from Sergeant Lawrence only heightens our concern with the existence of a conflict of interest, rather than ameliorates it.

■ That said, however, we also agree with the Court of Military Review that appellant knowingly and intelligently waived this conflict. In this connection, Judge Young wrote:

Captain C advised appellant of his representation of Sergeant Lawrence and his right to conflict-free counsel, and they discussed the possibility of a conflict on three occasions. At the *DuBay* hearing, appellant admitted that he had discussed the issue with Captain C prior to trial. Captain C also brought the possibility of a conflict to the attention of the military judge during an RCM 802 conference and during the Article 39(a) [, UCMJ, 10 U.S.C. § 839(a) ] hearing. Although his inquiry was superficial, the military judge obtained appellant's assurance that he had discussed the issue with his counsel and did not object to Captain C continuing to represent him. We conclude that appellant knowingly and intelligently waived his right to conflict-free counsel.

39 MJ at 591. For the same reasons, so do we.

■ Similarly, we agree with the military judge who conducted the *DuBay* hearing and with the Court of Military Review that the conflict did not adversely affect defense counsel's representation of appellant. Appellant judicially confessed to wrongfully appropriating the government computer; and so the only contested issue was his intent permanently to deprive the Government of that property. *Compare* Art. 121(a)(1) *with* Art. 121(a)(2). The stipulation of fact in this regard merely stated: "At no time did the accused ever tell Sgt Lawrence that he intended to return the computer to the USAF." Of course, absence of an expression to Sergeant Lawrence of intent to return the property is not tantamount to an affirmative expression of intent to the contrary. Much more telling of appellant's intent to keep the computer was the amount of software that he had obtained and had loaded onto it. In this light, the damage to appellant's defense by the stipulation was not substantial, and we do not disregard defense counsel's testimony at the *DuBay* proceeding that he believed it was less damaging to appellant than Sergeant Lawrence's live testimony might have been.

In summary, then, we hold that there was multiple representation rising to the level of an actual conflict of interest for defense counsel; however, appellant knowingly and intelligently waived his right to conflict-free counsel; and there is no evidence that the conflict adversely affected counsel's representation of appellant.

The decision of the United States Air Force Court of Military Review on further review is affirmed.

Chief Judge COX and Judges SULLIVAN and CRAWFORD concur.

GIERKE, Judge (dissenting):

I disagree with the holding that appellant "knowingly and intelligently waived his right to conflict-free counsel." A knowing and intelligent waiver must be premised on accurate and competent legal advice. In *United States v. Davis*, 3 MJ 430, 434 (CMA 1977), and again in *United States v. Breese*, 11 MJ 17, 22 (CMA 1981), we endorsed the procedure adopted by the Fifth Circuit in *United States v. Garcia*, 517 F.2d 272, 278 (1975). In *Garcia* the court held that in cases of multiple representation,

the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, *that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict*, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

(Emphasis added.)

In my view, appellant did not receive adequate legal advice from Captain Cantrall, his detailed counsel. Capt Cantrall could not advise appellant about the "details of [his] possible conflict of interest and the potential perils of such a conflict," because he did not understand the problem. At the hearing under *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), he testified that the two cases were not interrelated

and that he did not see an actual conflict. He perceived only "a possible appearance." When the military judge asked Capt Cantrall if he would have avoided any areas of inquiry in cross-examining Sergeant Lawrence, Capt Cantrall responded, "I'm not sure I understand your question...." A defense counsel who does not understand the problem cannot competently advise his client regarding it.

In my view, the conflict of interest adversely affected appellant's defense. After extensive cross-examination, Capt Cantrall finally acknowledged that he could have cross-examined Sgt Lawrence about his motive to lie, based on the fact that appellant had supplied the evidence supporting Sgt Lawrence's punishment under Article 15, Uniform Code of Military Justice, 10 USC § 815. Sgt Lawrence's testimony was the Government's only evidence of intent to permanently deprive. I am not willing, on this record, to find Capt Cantrall's failure to impeach a key government witness harmless.

I would order a rehearing and give appellant an opportunity to have conflict-free counsel who understands his duty and responsibility to his client.