OPINION OF THE COURT UPON FURTHER REVIEW
YOUNG, Senior Judge:
Our original opinion in this case was unpublished. United States v. Calamita, ACM 32092 (A.F.Ct.Crim.App. Aug. 12, 1998). That opinion is hereby withdrawn.
Contrary to appellant’s pleas, court members convicted him of indecently assaulting GD and KR (Art. 134, UCMJ, 10 U.S.C. § 934), and sentenced him to a bad-conduct discharge, confinement for one year, and reduction to the grade of E-3. In his initial brief, the appellant assigned three errors: (1) unlawful command influence; (2) the military judge erred by failing to grant a challenge for cause; and, (3) the military judge erred by admitting evidence under Mil.R.Evid. 404(b). After oral argument, heard on 27 February 1997, we ordered a post-trial hearing on the unlawful command influence issue. Claiming that the military judge lost his impartiality during the hearing, the appellant now requests this Court order another post-trial hearing. In addition, he has raised two new issues: (1) he was denied effective assistance of counsel at his trial; and, (2) the evidence was legally and factually insufficient to sustain his conviction of specification 2. We find some merit in appellant’s final issue, but find the sentence is nevertheless appropriate.
I. The Specifications
The accused was a reservist, serving a statutory extended active-duty tour as a reserve recruiter, at Hanscom Air Force Base, Massachusetts. He was convicted of
“requesting [GD] go with him to his office, closing the door, pinning her back against the partition, kissing her, holding her wrists so that her hands were above her head, then letting go of one of her wrists and placing his hand up her skirt touching her thigh, then turning her around so that the front of her body was pinned against the partition, touching her breasts and pressing his erect penis against her buttocks, then pulling her by one of her arms to a chair on which he sat, attempting to pull her on to his lap, stating “come on, there are many ways we can do this,” or words to that effect.”
He was also convicted of “requesting that [KR] go with him to his office, putting his arm around her, kissing her on her mouth, then locking the door of his office, then again putting his arm around her and kissing her on the mouth.”[1] The evidence adduced at trial consisted of testimony of the two women, GD and KR, the playing of an audio tape of a conversation between GD and the appellant, and the testimony of PL, who claimed she had been similarly assaulted by the accused nine years earlier. The sole defense witness, Technical Sergeant (TSgt) Perrault, was a fellow recruiter who had observed GD in the recruiting office, on six or seven occasions, talking to the appellant in what TSgt Perrault thought was a flirtatious manner.
II. Unlawful Command Influence
Charges were preferred against the appellant on 14 August 1995. At the recruiting region’s regularly-scheduled quarterly meeting on 31 August 1995, Chief Master Sergeant (Chief or CMSgt) Winter, the senior recruiter for the region, briefed the other recruiters on the case. Prior to doing so, he had coordinated with his commander and a member of the base legal staff. What the Chief said at that meeting was the subject of considerable debate among the various recruiters, the basis for the allegation of unlawful command influence, and the reason we ordered the post-trial hearing.
At the post-trial hearing, the military judge found that Chief Winter told the other recruiters to stay away from the investigation and not contact the accused. Some of the recruiters took this to mean that they should give the appellant some breathing room so that he could prepare his defense, while others saw it as a blatant attempt to *921 prevent them from helping the appellant. The military judge also found that the Chiefs comments did not have a chilling effect on the appellant’s ability to obtain favorable information for his trial; that the trial defense counsel were aware of the issue before trial; and that “these counsel had the means, wherewithal, and experience to bring that problem to the attention of the trial judge had they deemed it necessary.”
The appellant has the initial burden of producing sufficient evidence of unlawful command influence. He does that by alleging sufficient facts which, if true, constitute unlawful command influence, showing that the proceedings were unfair, and showing that the unlawful command influence was the proximate cause of the unfairness. United States v. Newbold, 45 M.J. 109, 111 (1996) (citing United States v. Stombaugh, 40 M.J. 208, 211 (C.M.A.1994)). The threshold triggering further inquiry is low, but the defense must produce more than bare allegations and speculation. United States v. Johnston, 39 M.J. 242, 244 (C.M.A.1994). Once the defense makes a colorable showing of unlawful command influence, the burden shifts to the government to either disprove the existence of unlawful command influence by clear and convincing evidence (United States v. Plumb, 47 M.J. 771, 777 (A.F.Ct.Crim.App.1997); but see United States v. Gerlich, 45 M.J. 309, 311 (1996) (declining to rule on applicable standard)), or to prove beyond a reasonable doubt that the unlawful command influence did not affect the findings or sentence. United States v. Thomas, 22 M.J. 388, 394 (C.M.A.1986).
The defense failed to make a color-able showing of unlawful command influence. Even if the facts alleged by appellant were true, the evidence fails to support a conclusion that the proceedings were unfair. The trial defense team knew of Chief Winter’s comments before trial, but apparently did not have any difficulty in getting the cooperation of any witness. They did not complain at trial or support the appellant’s claims at the post-trial hearing. Since the defense has the initial burden of going forward, we presume that the appellant would have called the trial defense counsel to testify at the post-trial hearing if they would have supported the unlawful command influence allegation. Every recruiter contacted by trial defense counsel to testify or provide a statement on behalf of the accused did so; TSgt Perrault testified on findings and Chief Winter and Master Sergeant (MSgt) France provided statements on the appellant’s behalf for sentencing. The defense apparently tried to contact MSgt Kemp, but were unable to speak with him before he departed for a family vacation to Florida. MSgt France was the only witness who was specifically asked to assist the appellant at trial who claims Chief Winter’s comments had a chilling effect. But, MSgt France was not asked to testify on the merits, and his character statement and testimony at the post-trial hearing belie any notion that he, personally, was chilled. We are satisfied that no reasonable person who was fully informed of the facts would “harbor any misgivings regarding either the fact of unlawful command influence or the role that an appearance of it might have played in this trial.” United States v. Campos, 42 M.J. 253, 261 (1995).
III. Request for New Post-Trial Hearing
The defense asserts that a new post-trial hearing is necessary because the military judge who conducted the first hearing “departed from his judicial role by making inflammatory comments about the witnesses, questioning the witnesses in a partial manner, incompletely discussing the evidence, and making an unwarranted comment about Appellants first appellate defense counsel.”
The military judge’s findings of fact contain some very critical evaluations of the witnesses which, the defense argues, demonstrate the military judge’s partiality. Specifically, appellant notes the military judge’s characterization of MSgt France as the “protagonist” who “is not particularly quick-witted,” “displays paranoid traits,” and “seems to be quiet and introverted — a surprising choice for recruiter duties.” The military judge characterized MSgt Kemp as “manipulative in his suggestions of helplessness, and need for protection,” and displaying “passive/aggressive behavior in his dealings with Chief Winter and in response to trial defense *922 counsel’s attempts to contact him.” He described another witness, Staff Sergeant Schoonover, as “display[ing] obvious bias and a disgruntled affect, in addition to quibbling on the stand.”
The defense also attacks the military judge’s “observations,” which are recounted below:
The soap-opera-like petty machinations of this recruiting squadron came as a surprise to me, particularly having sat as the original trial judge. The witnesses fell into two basic camps: management and malcontents. Those outlooks colored most of the testimony. Some, like MSgt France, went beyond mere bias, and ventured into manipulation. Others portraye themselves as mere pawns of the system dominated by the prince of darkness, Chief Winter. Yet, with the possible exception of MSgt Kemp, whose hapless self-portrayal was that of a “victim,” all these [non-commissioned officers] are experienced, independent adults who could and would do the right thing, even if they honestly perceived improper pressure; This whole sorry mess was nothing but a tempest in a teapot, extraneous to any issue in the case — a conclusion no doubt reached quickly by Captains Thompson and Siciliano when the matter was thrust at them during their pretrial preparation.
It is difficult to quibble with the military judge’s conclusion that MSgt France was the protagonist in this drama; he was the leader or champion of the appellant’s cause. See American Heritage Dictionary of the English Language 1455 (3d ed.1992). The military judge’s comments about the first appellate defense counsel are not frivolous or totally without merit. While one can argue whether the failure to brief the fact that the Chiefs comments had been brought to trial defense counsel’s attention before trial amounts to an “ethical deficiency,” it certainly would have been more candid.
We agree with the defense that the military judge took a very active, perhaps even aggressive, role in questioning witnesses. He did so after giving both sides ample opportunity and considerable latitude in developing their evidence; and in the face of seemingly irreconcilable differences in the testimony. The defense is also correct in asserting that a military judge must be courteous to litigants and witnesses, judicious in his questioning of witnesses at trial, and impartial in his decisions.
But, this was not the findings portion of a court-martial in which the prosecution has the burden of proving an accused guilty beyond a reasonable doubt. This was a post-trial hearing in which the military judge had the burden of providing a record on which this Court can reach a decision on the merits of the appellant’s claims. In such circumstances, we expect the military judge, when necessary, to subject witnesses to penetrating questioning so that he can determine their credibility, reconcile inconsistencies in the testimony, and find facts. In the past, we have criticized military judges who have regurgitated the testimony of the respective witnesses in their findings without ever resolving credibility issues. See United States v. Denier, 43 M.J. 693, 698 (A.F.Ct.Crim.App.1995). In this case, the military judge did as he was instructed. He reconciled the differences in the evidence and provided this court a record upon which we can resolve appellant’s claims. While some of the judge’s comments may have been gratuitous, we view these as an expression of his frustration with the pettiness and vindictiveness of some of the witnesses and the apparent lack of candor of counsel, rather than a lack of impartiality.
IV. Challenge for Cause
During voir dire, CMSgt D disclosed that she had been the victim of an offense similar to that with which the appellant was charmed. When questioned by the military judge during individual voir dire, the Chief stated that she would not be uncomfortable talking about the issue; she had been raped by three escaped convicts when she was 15-years-old; after the rape, she had therapy on a weekly basis for approximately three months; she had dealt with the issue of rape on many occasions during her 13 years as a first sergeant; the rape was not a matter that caused her recurrent problems; and, *923 she did not believe she would have any problems sitting on the case. Neither the trial nor defense counsel asked her any questions on this issue. In his challenge for cause, the defense counsel observed that the Chiefs voice appeared to be trembling when she discussed the issue. The military judge disagreed with that assessment. After considering the liberal standard for such challenges, the military judge nevertheless denied the challenge. He based his decision on the length of time from the rape, his failure to detect any sensitivity by the Chief to the issue, and his finding the appellant’s case to be significantly dissimilar to the Chiefs. The defense declined the military judge’s offer to recall the Chief for further questioning.
“A servieemember ... has, as a matter of “fundamental fairness,” the right to impartial court members to decide his guilt. In addition, (pursuant to R.C.M. 912(f)(l)(N),) a military accused has a regulatory right to court members who appear to be impartial.” United States v. Ai, 49 M.J. 1, 3 (1998) (citations omitted). The burden for establishing the grounds for the challenge is on the party making it. R.C.M. 912(f)(3). A challenge for cause based on actual bias is a credibility call of the military judge, and we give “great deference” to the judge’s decision. United States v. White, 36 M.J. 284, 287 (C.M.A.1993). Implied bias exists when a reasonable person, knowing all the facts, would believe there is a “substantial doubt” about the “legality, fairness, and impartiality” of the court-martial because of the member’s presence on the court panel. Appellate courts give less deference to the military judge’s conclusions in eases of implied bias. United States v. Minyard, 46 M.J. 229, 231 (1997). Military judges must be liberal in granting challenges for cause, but we will not overturn a military judge’s ruling denying such a challenge except for a clear abuse of discretion in applying the liberal-grant mandate. White, 36 M.J. at 287.
At trial, the accused complained that CMSgt D should not sit as a court member because the, traumatic sexual nature of her rapes could affect her during the trial. This is a challenge for actual bias. See Ai, 49 M.J. at 5 (quoting United States v. Torres, 128 F.3d 38, 43 (2d Cir.1997)) (actual bias refers to “the existence of a state of mind that leads to an inference that the person will not act with entire impartiality”); United States v. Velez, 48 M.J. 220, 223-24 (1998) (concluding that challenge against member whose friends were raped because of the effect it might have on his decisions was challenge for actual bias). After fully considering CMSgt D’s answers during voir dire and comparing the facts of this case with the rape of CMSgt D, we are convinced that the military judge did not abuse his discretion in denying the challenge for cause. The Chiefs answers were strong and unequivocal, her status as a victim was attenuated by the passage of time and counseling, and the facts of the cases are dissimilar. See United States v. Fulton, 44 M.J. 100, 101 (1996). While military appellate courts have not been reluctant to reverse military judges for denying challenges for cause when court members have been victims of similar violent or traumatic crimes (see Daulton, 45 M.J. at 217) (citing United States v. Smart, 21 M.J. 15 (C.M.A.1985)), we do not believe it is necessary in this case. The defense failed to meet its burden of showing CMSgt D was biased.
On appeal, the accused has added a claim that the military judge should have granted the challenge to CMSgt D because of implied bias. By failing to raise the issue of implied bias at trial, however, the accused forfeited the issue. “[Tjherefore, we review this post-trial claim only for plain or obvious error.” Ai, 49 M.J. at 5. Plain error is error that “seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.” United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936); United States v. Fisher, 21 M.J. 327, 328 (C.M.A.1986). CMSgt D’s candid disclosure of the rapes, the attenuation of the effects of the rapes by counseling and the passage of time, and the fact that the accused was not charged with rape, convince us that the military judge’s failure to excuse her from implied bias was not plain error. Furthermore, even had the issue been raised at trial, we are convinced, for the same reasons, *924 that the Chiefs presence on the panel would not cause substantial doubt about the fairness of the appellant’s court-martial.
V. Evidence Admitted Under Mil.R.Evid. 404(b)
After the appellant entered his pleas, the trial counsel sought a ruling on the admissibility of the testimony of PL under Mil.R.Evid. 404(b). PL testified in an Article 39(a), UCMJ, session that she met the appellant on 9 December 1986 at the base education center when she was an airman on active duty. Appellant was an education counselor and PL was attempting to sign up for some classes. After completing some paperwork, the appellant offered PL a tour of the facility. During the tour, the appellant took PL into the computer room, closed the door, grabbed her upper arms and kissed her intensely, forcing his tongue into her mouth. PL was shocked and left in a hurry. PL was not flirting with the appellant and did not invite the kiss.
The prosecution offered PL’s testimony to prove intent, motive, modus operandi, and later, as rebuttal to mistake of fact. The military judge delayed ruling on the testimony until after the prosecution had completed its case. After performing the balancing test required in Mil.R.Evid. 403, the military judge admitted PL’s testimony as evidence of a common scheme or plan. During findings instructions, the military judge advised the members that if the accused honestly believed GD was consenting then he could not be convicted of indecent assault. The military judge also gave a limiting instruction on how the court members could use PL’s testimony: if the members found the acts occurred as PL testified, and they found it to be markedly similar to the appellant’s acts as testified by GD and KR, they could use PL’s testimony as indicative of a common scheme or plan.
While evidence of uncharged misconduct is not admissible to show that the accused is a bad character and therefore committed the charged acts, such evidence may be admissible for other purposes, such as to prove motive, intent, common scheme or plan, or absence of mistake. Mil.R.Evid. 404(b). We review the military judge’s ruling admitting such evidence for an abuse of discretion. United States v. Acton, 38 M.J. 330, 332-33 (C.M.A.1993) (citing United States v. Spata, 34 M.J. 284, 286 (C.M.A.1992)). To find an abuse of discretion, we must be convinced that the military judge’s decision was arbitrary, clearly unreasonable or clearly erroneous. United States v. Travers, 25 M.J. 61, 62 (C.M.A.1987).
We are convinced that the military judge did not abuse his discretion in admitting PL’s testimony. There is ample case law to support his conclusion that PL’s testimony was admissible, as a common scheme or plan, to corroborate the testimony of GD and KR. See United States v. Munoz, 32 M.J. 359, 363 (C.M.A. 1991) (admission of uncharged sexual misconduct with daughter A to corroborate testimony of daughter B by showing the accused’s plan to molest his daughters); United States v. Brannan, 18 M.J. 181, 183 (C.M.A.1984) (the acts must be almost identical so as to suggest that all the acts were the result of the same plan). We concur with the military judge’s finding that the acts of the accused were so similar as to be almost identical.
Furthermore, the thrust of the defense, from the opening statement to final argument, was that the appellant’s acts were not indecent and the prosecution had failed to meet its burden of proving the accused’s guilt of the elements of indecent assault. While the acts constituting indecent assault need not themselves be indecent (see Section VII), the prosecution must establish beyond a reasonable doubt that the appellant had the intent to gratify his sexual desires. We find that PL’s testimony is clearly relevant to the accused’s intent when he kissed KR. We likewise concur with the military judge’s assessment under Mil.R.Evid. 403. The likelihood of unfair prejudice does not substantially outweigh its probative value.
VI. Ineffective Assistance of Counsel
In a brief submitted following the post-trial hearing, the appellant, for the first time, asserts that his trial defense counsel were ineffective for failing to raise the unlawful command influence issue in a pretrial motion. *925 We can find no justification for the failure of the appellant to raise this matter in his first assignment of errors. All of the facts the appellant relies on to support this assignment of error were known to him before he submitted his original brief, they were contained in the documents this Court admitted at his request. In the future, we may decline to accept such issues which are presented out of time without a showing of good cause. Cf. United States v. Smith, 39 M.J. 587, 592 (A.F.C.M.R.1994), mot. denied, 41 M.J. 385 (1995), aff'd, 44 M.J. 459 (1996). However, to avoid further litigation and a claim of ineffectiveness of appellate defense counsel, we will rale on this assignment of error.
There is a “strong presumption” that defense counsel was competent, and the appellant bears the burden of proving that his counsel was ineffective. Strickland v. Washington, 466 U.S. 668, 687-89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To support a finding that his counsel was ineffective, the appellant must demonstrate that (1) his counsel “made errors so serious that counsel was not functioning as” counsel within the meaning of the Sixth Amendment, and (2) “counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.” Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Where the allegation of ineffectiveness is based on a failure to make a motion, the appellant must show a reasonable probability that the motion would have been meritorious. Cf. Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (ineffectiveness claim based on counsel’s failure to litigate Fourth Amendment objection to evidence; must also show reasonable probability that verdict would have been different absent the excludable evidence); United States v. Loving, 41 M.J. 213, 244 (1994), aff'd, 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).
The appellant has failed to establish either prong of the Stnckland test. It is apparent that trial defense counsel interviewed MSgt France, were aware of the issue, and obtained witnesses who attended the meeting to assist the appellant’s defense. Based on the evidence from the post-trial hearing, there is no reasonable probability that the appellant would have prevailed on a motion for appropriate relief due to unlawful command influence. There is just no credible evidence to support a reasonable belief that Chief Winter’s comments prevented the appellant from calling witnesses in his behalf, or that the appellant was deprived of a fair trial.
VII. Legal and Factual Sufficiency of Specification 2
Following the post-trial hearing, the appellant claimed, for the first time, that the evidence is factually and legally insufficient to sustain his conviction of specification 2. Appellant’s counsel quote the Court of Appeals for the Armed Forces — “[We are sure the court below would not sanction a ‘potted plant’ role for appellate counsel with regard to new issues” — for the proposition that we should consider this new issue. The appellee opposes this request because appellant has failed to show good cause for raising this supplemental issue. In the past, we have expressed our unwillingness to entertain supplemental issues out of time absent a showing of good cause. See Smith, 39 M.J. at 592. However, we have a statutory duty to examine the legal and factual sufficiency of every specification approved by the convening authority regardless of whether the defense has assigned the issue as error. Art. 66(c), UCMJ, 10 U.S.C. § 866(e). The appellant’s brief may assist us in performing that statutory duty. Since we had not already ruled on the sufficiency of the evidence, we choose not to apply our good cause rule to this issue.
The test for legal sufficiency is “whether considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all essential elements beyond a reasonable doubt.” The test for factual sufficiency is “whether, after weighing the evidence in the record of trial and making allowances for not having, personally observed the witnesses, [we are] convinced of the accused’s guilt beyond a reasonable doubt.” United States v. Turner, 25 M.J. 324-25 (C.M.A.1987).
*926 The defense attacks specification 2 on two grounds: (1) the evidence fails to support a conclusion that the appellant kissed KR twice; and, (2) the appellant’s acts were not indecent. We find merit in this first assertion, but not the second.
KR worked in the same building on Hans-com Air Force Base as did the appellant, albeit on different floors. KR had seen the appellant in the halls and gymnasium approximately 10 times. They had only exchanged greetings in passing, and she did not even know his name. On one occasion, the appellant had asked her for help in finding an officer to administer the enlistment oath. She found an officer and went to the accused’s office to watch the enlistment ceremony. On KR’s last day at the office, she ran into the accused in the hallway. After telling him that she was on her way to her going-away party in Lowell, the appellant said he was going to Lowell to return the key to his house. As a courteous gesture, KR invited the appellant to drop by the party if he wanted, but he did not do so. At the end of the day, as KR was clearing out her desk, the accused stopped in and asked her to come to his office because he had something to give her. KR told him she would be there in a couple of minutes, but he waited for her and accompanied her to his office. Once inside, he gave her a couple of Air Force Reserve mementos, then grabbed her in an embrace with both arms around her shoulders and kissed her on the lips for about two seconds, ran to the door and locked it. On direct examination, KR testified that, after locking the door, the appellant “came back and did it again.” Later, during both direct and cross-examination, she stated that the appellant put his arms around her a second time, but she could not remember if he actually kissed her a second time. We find the evidence legally insufficient to support a finding of guilty for the second kiss. We will remedy this error in our conclusion.
The defense argument that the evidence fails to establish that the kiss was indecent misses the point. The offense of indecent assault is different than its name would suggest. There is no requirement that the accused’s acts be indecent. Indecent assault “is merely a simple assault committed by one with a prurient state of mind.” United States v. Hoggard, 43 M.J. 1, 3 (1995). Of course, appellate defense counsel may have been misled, as may the counsel at trial, by the standard indecent assault instruction which the military judge gave to the members. Although the indecency of the acts is not listed as an element of the offense, a definition of indecent is part of the standard instruction. See Military Judges’ Bench-book, DA Pamphlet 27-9,T 3-63-1 (1996). As in Hoggard, however, the issue is not whether the accused’s acts were indecent, but whether the evidence establishes that appellant’s acts constituted an offensive touching and were done with the intent to gratify his sexual desires.
KR’s testimony alone is sufficient to support, both legally and factually, the appellant’s conviction. Here, unlike in Hoggard, there were no “romantic” overtones which could lead one to believe that KR would welcome this offensive touching. There was no flirting between KR and the appellant, and no evidence that she returned the kiss or in any way welcomed it. This was clearly an offensive touching.
The accused’s intent to gratify his sexual desires is amply demonstrated by his actions after the initial kiss by locking the door and returning to the assault. But, we aren’t limited to that evidence. The testimony of GD and PL was admissible to show the accused’s intent in luring KR up to his office and kissing her.
VIII. Conclusion
We affirm the findings of guilty to specification I and the Charge. We also affirm only so much of the finding of guilty to specification 2 as provides that the appellant did “commit an indecent assault upon [KR], a person not his wife, by putting his arm around her and kissing her on her mouth, with the intent to gratify his sexual desires.”
After considering the entire record, we are convinced that the modification in the find *927 ings would not have affected the sentence the court members adjudged. The findings, as modified, and sentence are correct in law and fact, and accordingly, are
AFFIRMED.
Senior Judge SNYDER and Judge SENANDER concur.

. We remind practitioners that the military is a notice pleading jurisdiction. United States v. Sell, 11 C.M.R. 202, 206, 1953 WL 2005 (C.M.A.1953). There is no need to plead every fact the prosecution intends to prove at trial.