**UNITED STATES**

v.

**Keith M. HENRY, 258 25 1102, Private (E–1), U.S. Marine Corps.**

**NMCM 92 00042.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 12 June 1991.

Decided 8 March 1999.

LT Dale O. Harris, JAGC, USNR, Appellate Defense Counsel.

LT Janice K. O'Grady, JAGC, USN, Appellate Government Counsel.

Before LEO, Senior Judge, ANDERSON and COOPER, Appellate Military Judges.

COOPER, Judge:

We once again review this case following the action of our superior court, which set aside our earlier decision and remanded the case for our reconsideration of two issues. First we were directed to reconsider appellant's claim that he was denied conflict-free counsel. If we determined that the counsel were conflict-free, we were to reconsider

whether appellant's claim of selective prosecution was waived by failure to raise it in a timely fashion. We reviewed the record of trial, the pleadings of the parties and the opinion of the United States Court of Appeals for the Armed Forces, *United States v. Henry*, 42 M.J. 231 (1995), and concluded that the use of affidavits would not be an adequate method of resolving the issues of either conflict-free counsel or selective prosecution. Accordingly on 11 October 1995, we ordered an evidentiary hearing in accordance with *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). A *DuBay* hearing was held on 17 April, 26 June, 11 and 12 July, 1 August, and 20 December 1996. Findings of Fact were prepared by the military judge on 27 May 1997.

We have carefully reviewed the record of trial, the record of the *DuBay* hearing, with its attached documentation, the hearing officer's findings of fact and conclusions of law, and the briefs of both appellant and the Government on these two issues. We find appellant was denied conflict-free counsel. We therefore set aside the findings and sentence and return the record to the convening authority. A rehearing is authorized.

### Facts

A synopsis of the facts is necessary for a clear understanding of the issues. During the period from his initial pretrial confinement through the date of the trial, appellant met with four different military attorneys, including the two who represented him at trial. The first attorney detailed to represent appellant was Captain H. He was assigned at the time appellant was confined.[1] Captain H was subsequently released from his duty to represent appellant by the senior defense counsel. Captain H met with appellant on one occasion in the brig but due to the passage of time does not remember discussing the substance of appellant's charges. *DuBay* Record at 131–132; 213–214.

Appellant's second attorney was Captain G.[2] She testified that she had no recollection of ever having represented appellant. *DuBay* Record at 174. However, the *DuBay* record reveals she was appointed to represent appellant as an individual military counsel. During the *DuBay* hearing, she was shown an Article 32, UCMJ, 10 U.S.C. § 832 (1994) rights form, Appellate Exhibit IX, signed by her and the appellant. She acknowledged that she must have discussed this form with him, but again, due to the passage of time, had no recollection of it. *DuBay* Record at 177. She also had no recollection of representing him at a hearing to vacate a suspended sentence from a prior court-martial. *DuBay* Record at 177. However, the record reveals she did represent appellant at that hearing. The charge before that vacation hearing was desertion in the time of war. Appellate Exhibit XV. This charge had been preferred for trial at the time of that hearing and was eventually referred to appellant's general court-martial. It was on her advice that appellant admitted guilt at the vacation hearing. It was after the vacation hearing that Captain G informed the appellant that she could no longer represent him because of a conflict of interest between appellant and a co-conspirator, Private Thomas. *DuBay* Record at 218.

Appellant was then provided with Captain K as an individual military counsel. It was Captain K's first general court-martial, and one of his first courts-martial of any type. Captain K did not represent any other co-conspirators.

Captain S was detailed as the assistant defense counsel after 2 May 1991. We find that this detail was done to provide Captain K and appellant with an experienced counsel to assist at the Article 32, UCMJ, investigation and the trial. Captain S represented four other co-conspirators at various military justice tribunals. *DuBay* Record at 149–51. He represented Private Nelligan at an unrelated, prior special court-martial as the de-

---

1. Appellant was confined on 15 March 1991. Charge Sheet. Captain H removed himself from appellant's case in early May 1991 when he began representing Private E.E. Evans. The charges were preferred on 13 May 1991 and the hearing report is dated 16 May 1991. Charge Sheet and Article 32, UCMJ, report of Private E.E. Evans.

2. Captain G gave appellant information regarding Article 32, UCMJ, hearings on 6 May 1991. Appellate Exhibit IX.

tailed counsel. This occurred in October 1990. He also represented Private Nelligan for his administrative discharge in October 1991. Although this administrative separation appears related to his involvement in these charges against appellant, it is not clear in the record. *DuBay* Record at 150. He represented Private McDaniel in an unrelated special court-martial in December 1990 as the assistant defense counsel. *DuBay* Record at 149. He represented Private E.E. Evans at two prior unrelated courts-martial, one in November 1990 and the second in March 1991. *DuBay* Record at 150. The fourth co-conspirator represented by Captain S was Private Potts. He represented Private Potts at his special court-martial in May 1991. Private Potts' charges were referred on 27 March 1991 and the trial was held on 2 May 1991. *See DuBay* Record, Findings of Fact at 17–18. Captain S represented Private Potts on charges related to those of appellant.[3]

### Discussion

In reaching our decision, we are guided by our superior court's stepping-stone rationale utilized in *United States v. Smith*, 44 M.J. 459 (1996). The questions we must answer are these: "Was there multiple representation? If so, did it give rise to an actual conflict of interest? If so, did appellant knowingly and intelligently waive his right to conflict-free counsel? If not, did the conflict have no adverse effect on counsel's representation of appellant?" *Id.* at 460.

### Multiple Representation

■ We must first decide which attorneys formed an attorney-client relationship with appellant. This Court has said "an attorney-client relationship is formed when a service member obtains legal advice of any kind from an individual representing himself as a legal advisor. The existence of an attorney-client relationship creates a confidential relationship that provides an evidentiary and ethical protection surrounding any confidences disclosed during that relationship."

*United States v. Hustwit*, 33 M.J. 608, 612 (N.M.C.M.R.1991). *See also United States v. Stern*, 511 F.2d 1364 (2d Cir.1975) and *United States v. White*, 950 F.2d 426 (7th Cir. 1991).

As to each of the four attorneys, we find as follows. As to Captain K, there is no issue of multiple representation because appellant was his only client.

■ We independently find, as did the military judge at the *DuBay* hearing, that Captain H did not form an attorney-client relationship with appellant. *DuBay* Record, Findings of Fact at 4. He was at one point designated as detailed counsel. Appellate Exhibit XIV. We do not find that the mere record of assignment itself controls. Instead we look at the nature of the relationship, if any, between appellant and Captain H. We find that he and appellant did not discuss the facts and circumstances of the current charges. The only item appellant remembers discussing with Captain H concerned the impact on jurisdiction of the affirmance of his prior court-martial. We find that this did not require disclosure by appellant of any confidential information, as the opinions of this Court are a matter of public record. He never discussed any substantive issues with appellant. Additionally, no action was taken in reliance on any answer given by Captain H. There was no attorney-client relationship and thus no multiple representation by Captain H.

■ We find that Captain G's representation of co-conspirator Private Thomas occurred contemporaneously with her representation of appellant. While representing Private Thomas, she had also been assigned to represent appellant at a hearing to vacate a prior suspended punishment. Although the main charge at that hearing was desertion in time of war, on the date of the hearing, appellant's current conspiracy charges had been preferred.[4] Thus, we find Captain

---

3. The military judge at the *DuBay* hearing attempted to retrieve the records of trial in these co-conspirator cases. The records of Private E.E. Evans are attached to the *DuBay* Record, as is the administrative separation papers for Pri-

vate Nelligan. However the records for Private Potts and Private McDaniel were not recovered.

4. They were preferred on 10 May 1991, and the vacation hearing was held on 13 May 1991.

G had an attorney-client relationship with each and there was multiple representation.

██ The military judge at the *DuBay* hearing found that Captain S was only an advisor to Captain K and did not participate actively in the decision-making with appellant.[5] We disagree. We find there was an attorney-client relationship. Both appellant and counsel agree that Captain S was the person who explained the law and the facts to appellant as to why and how he could plead to the conspiracy surrounding the theft of the identification cards. *DuBay Record* at 198. Although Captain S may have also used information he had obtained from an earlier client (Potts) to explain to appellant how he could plead guilty, he was clearly discussing the facts and circumstances of the case with appellant and assisting appellant in making crucial decisions regarding the strategy and conduct of his trial. The fact that we set aside those findings in our earlier decision does not affect the existence of the attorney-client relationship between Captain S and appellant.[6] Thus we find multiple representation by Captain S. He represented four other co-conspirators at one forum or another. Although the record is unclear as to when the administrative separation of Private Nelligan began, he was separated after the trials of all co-conspirators and he testified against some, including appellant. As to Private Potts, his trial was completed prior to appellant's Article 32, UCMJ, investigation. *DuBay* Record at 150. However, because there is no record of trial to examine, we will not assume that it was completed prior to his representation of appellant. Although not all representations occurred during appellant's litigation process, the co-conspirators were still Captain S's clients such that he was limited in his ability to cross-examine them or use any of the knowledge gained while representing them against them. *SEE* RULE FOR COURTS-MARTIAL 502, MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.); Judge Advocate General Instruction 5803.1 (26 October 1987).[7]

### Conflict of Interest

██ A military accused is guaranteed the right to effective assistance of counsel under the Sixth Amendment and Article 27, UCMJ. *United States v. Fluellen*, 40 M.J. 96, 98 (C.M.A.1994); *United States v. Scott*, 24 M.J. 186 (C.M.A.1987). This right includes the assistance of counsel who is free from conflicts of interest. *United States v. Carter*, 40 M.J. 102, 105 (C.M.A.1994)(citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

██ "Once a confidential relationship exists, the attorney ordinarily cannot act in a manner inconsistent to the client's interest in the same or any other matter related to the subject of the confidence. This is so even if the relationship then existing at the time of disclosure was subsequently terminated." *United States v. Hustwit*, 33 M.J. at 613 (citing *United States v. Green*, 5 U.S.C.M.A. 610, 18 C.M.R. 234, 1955 WL 3315 (1955)). If an attorney acts in a manner inconsistent with the client's interests, this is a conflict of interest. Judge Advocate General Instruction 5803.1, Rules 1.7, 1.8e., and 1.9. (26 October 1987).[8]

Counsel's performance is adversely affected when "some plausible alternative defense strategy or tactic might have been pursued," and "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."

---

5. The military judge noted in his findings that Captain S never put any "limitations" on Captain K's representation of appellant or his cross-examination of any witnesses at the Article 32, UCMJ, hearing. This ignores the primary issue, which was that Captain S was supposed to be providing representation to appellant and not merely advising Captain K.

6. We also note that Captain S was required to form an attorney-client relationship as part of his ethical responsibilities as a detailed assistant counsel. We trust that no judge advocate detailed to represent an accused would merely serve as an "advisor" to another counsel. Meeting and discussing the case with the client is fundamental to effective representation, and such action is the minimum acceptable level of professional performance.

7. Now Judge Advocate General Instruction 5803.1A (Ch–3, 12 July 1993).

8. Now Judge Advocate General Instruction 5803.1A (Ch–3, 12 July 1993).

*Winkler v. Keane,* 7 F.3d 304, 309 (2nd Cir.1993)(quoting *United States v. Fahey,* 769 F.2d 829, 836 (1st Cir.1985)); *United States v. Gambino,* 864 F.2d 1064, 1070 (3rd Cir.1988).

Additionally, to establish a valid claim of conflict of interest, appellant must show more than the mere "possibility" of a conflict. *Sullivan,* 446 U.S. at 350, 100 S.Ct. 1708. He must show that (1) "[his] counsel actively represented conflicting interests" and (2) "an actual conflict of interest adversely affected his lawyer's performance." *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(*Sullivan,* 446 U.S. at 348, 350, 100 S.Ct. 1708) (internal quotation marks omitted); *United States v. Smith,* 36 M.J. 455, 457 (C.M.A.1993).

Applying these guidelines to Captain G, we find no conflicting interests that adversely affected her representation of appellant. We do find she gave substantive advice on a charge, desertion, for which appellant was charged and tried. She gave advice that presumably impacted on future trial decisions (admitting guilt at the vacation hearing limited potential options as to that desertion charge). Under the circumstances, it would have been more prudent for Captain G to withdraw from her representation of appellant prior to the vacation hearing rather than afterwards.[9] The timing of her withdrawal would be suspect except for the fact that she appears to have given appellant the advice to "plead guilty at the hearing and ask for mercy," prior to the preferral of the additional charges. In reality, desertion in time of war, a capital offense, was the most serious charge. It cannot be ignored that appellant's admissions at his vacation hearing would be admissible at his trial. The desire for this charge to be prosecuted in a non-capital fashion, and the ability to defend, or not to defend against that charge could influence the pleas and desire to litigate the remaining charges. We find that from the timing of the preferral of the additional charges, 10 May, and the timing of the vacation hearing, 13 May, Captain G had to have been aware of the potential conflict.[10] Although the desertion charge was not related to one in which her other client, Private Thomas, was involved, the conspiracies were. We find no evidence in the record that her advice to appellant for the vacation hearing was done to further the interests of Private Thomas or was done to harm appellant. It appears that her advice to plead guilty and ask for mercy was given prior to her knowledge of the conflict of interest. We agree with the military judge that she did not discuss with appellant any matters relating to the conspiracy charges in which her other client, Private Thomas, was involved. Thus, although she had an ongoing, contemporaneous, attorney-client relationship with both Private Thomas and appellant, we find no actual conflict of interest.

As to Captain S's representation of appellant, we find a conflict of interest. Captain S agreed that the type and degree of assistance he could provide to Captain K, and therefore the appellant, was limited by his prior representations. This affected his representation of appellant and is a conflict of interest. Captain S was detailed as the assistant defense counsel. He owed an ethical obligation to his client to discuss the pros and cons of a guilty plea vice contesting the charges. The ability of counsel to cross-examine witnesses and to participate in the

---

9. It appears that Captain G knew on the day of the hearing that there was a conflict. The military judge found that Private Thomas was placed in pretrial confinement on 6 May 1991 and that Captain G had met with him. The charges against appellant were preferred on 10 May 1991, including the charge relating to the conspiracy with Private Thomas and the desertion in time of war. The date of the vacation hearing was 13 May 1991. (AE XV). Thus Captain G could have, and should have, asked to be excused due to the conflict of interest prior to the vacation hearing. Had this been done, then a counsel without an appearance of a conflict could have advised appellant regarding his statements to the vacation-hearing officer admitting guilt to this serious offense.

10. Should this scenario arise in the future, we remind all counsel of the current requirements of the Judge Advocate General Instruction 5301.1A, Rules 1.7–1.9 (Ch–3, 12 July 1993), which discuss conflict of interests among clients and the counsel's responsibilities to disclose such conflict and obtain each client's permission before proceeding.

defense of the client is relevant to these issues. *See* R.C.M. 502, Discussion; Judge Advocate General Instruction 5803.1A, Rule 1.4 (26 October 1987). He failed to discuss any of these matters with his client. He left it to the less experienced counsel to assist and to discuss the pros and cons of the facts of the case. The less experienced counsel failed to discuss the limitations on the co-counsel's ability to represent the client. Captain K admitted that appellant would probably not have received effective representation had Captain S not been available to assist. *DuBay Record* at 193. However, even Captain K was not aware of all of the potential conflicts. He stated at the hearing that he thought Captain S represented Private Evans, but Captain K did not mention any of the other co-conspirators represented by Captain S at other unrelated courts-martial. *DuBay* Record at 193. He was therefore apparently not aware that Captain S had represented some of these individuals. Thus Captain S's actions adversely affected Captain K's ability to represent appellant as well.[11] Additionally, Captain S indicated that his representation of these other clients would have posed a problem had appellant's trial been fully contested. *DuBay* Record at 164. Captain S could not have cross-examined a prior client, nor could he have discussed strategy regarding how to question a prior client with Captain K.[12] This, too, is an actual conflict of interest as it affected his ability to objectively represent appellant. Although Captain K said the idea to plead guilty originated with appellant, the decision to do so could not have been fully informed without appellant knowing the existence of the conflict, and the potential impact of that conflict on his detailed assistant defense counsel.

### Knowing Waiver

An accused is entitled not only to be represented by conflict-free counsel, he is presumed not to waive that right. *United States v. Kelly*, 32 M.J. 813, 824 (N.M.C.M.R. 1991) (citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942)); *United States v. Davis*, 3 M.J. 430 (C.M.A. 1977). Finding an actual conflict of interest, we next look to see if appellant made a knowing waiver. We find that he did not. He did not even know of the existence of this conflict until after he had entered pleas of guilty. *DuBay* Record at 161; Trial Record at 65–68. Although the military judge informed appellant of the apparent conflict, he did not inform him of the exact nature or possible impact of this conflict. Trial Record at 65–68; *United States v. Davis*, 3 M.J. 430 (C.M.A.1977). Nor did the military judge provide appellant with an opportunity to discuss this matter with an independent counsel. No new information on this subject was gathered at the *DuBay* hearing. We find there was no disclosure and thus no knowing waiver.

### Adverse Impact

We now turn to the last stepping-stone. The burden to show the non-existence of an adverse impact lies with the Government. As we said in *United States v.*

---

**11.** It appears that Captain S did not make full disclosure to Captain K regarding his prior representations. This had to have had an impact on Captain K's trial preparation. He was depending on Captain S for advice on cross-examining each witness. How would Captain K know if Captain S's silence regarding a witness, who was an undisclosed prior client, was because there were no matters upon which to cross-examine or was because Captain S could not discuss the prior client? Captain S not only misled appellant but also his co-counsel.

**12.** We note that with the limited number of attorneys available in remote locations, providing experienced, conflict-free counsel may pose a logistical problem, but nevertheless remains a requirement. Captain K needed assistance with his first court-martial. That should have been and was expected. A defense counsel simply cannot be appointed to represent more than one party to a conspiracy without providing full disclosure of that fact to the accused and the court. This disclosure is required under the ethical rules that guide all Navy and Marine Corps judge advocates. Judge Advocate General Instruction 5803.1A (Ch–3, 12 July 1993). The accused and the court must decide if the multiple representation will be allowed, not the senior defense counsel. We strongly encourage all parties to examine their roles in companion cases or cases in which prior clients might be involved, and take whatever steps are necessary to provide the accused with conflict-free counsel. To do otherwise frustrates our system of military justice, and is unacceptable practice.

*Augusztin,* 30 M.J. 707 (N.M.C.M.R.1990), once the actual conflict of interest is shown, appellant need not show prejudice in order to obtain a reversal of his conviction. We interpret the stepping-stone language in *United States v. Smith,* 36 M.J. 455 (C.M.A.1993), to allow the Government the opportunity to show the negative, (i.e., no adverse impact), or the conviction will be reversed. We find that the Government did not meet this burden.

■ Although appellant need not show any adverse impact, a review of the record shows that it existed. The most obvious adverse impact was the limit Captain S placed on himself in representing appellant. Although he participated to some degree, he limited his direct contact with appellant. He did this knowing that he was appointed as the assistant defense counsel because the other counsel was inexperienced. Additionally, Captain S recognized that if the case were contested, he would. be limited in his participation because conflict issues would arise. He had at least an arguable interest in getting appellant to plead guilty to avoid the conflict of interest appearing on the record.

Appellant did plead guilty, and the providence inquiry indicated sufficient basis for the plea. However, we·do not find that this negates the adverse impact on appellant, especially when one considers the problems encountered in getting appellant to plead guilty to the charges and specifications outlined 'in the agreement by his inexperienced counsel. *DuBay* Record at 198, 201, and 224. We find it obvious that the experience of Captain S was needed and that appellant was deprived of the benefit of his experience.

Accordingly, the findings and sentence are set aside [13]. A rehearing is authorized.

Senior Judge LEO and Judge ANDERSON concur.

---

**13.** We need not address the selective prosecution issue based upon the dispositive nature of the counsel issue.