UNITED STATES, Appellant,

v.

Clinton CALHOUN III, Airman Basic,
U.S. Air Force, Appellee.

No. 98–5001.
Crim.App. No. 32314.

U.S. Court of Appeals for
the Armed Forces.

Argued June 4, 1998.

Decided Oct. 1, 1998.

For the Accused: *Major Ray T. Blank* (argued); *Colonel Douglas H. Kohrt* (on brief).

For the United States: *Lieutenant Colonel Michael J. Breslin* (argued); *Colonel Brenda J. Hollis* (on brief).

*Opinion of the Court*

MAYER, Circuit Judge:[1]

*FACTS*

Appellee Clinton Calhoun had his base driving privileges revoked because of repeated infractions. Disobeying this restriction, while driving on base he ignored a security guard's order to stop. He was offered nonjudicial punishment, which he declined. The Government then convened a special court-martial, and Calhoun was tried for disobeying a lawful order and the driving violation.

At trial, Calhoun was represented by Air Force Area Defense Counsel (defense coun-sel), Captain K., and civilian counsel, J. Rans-dell Keene. His initial defense was based on a false alibi, which included Calhoun's brother, among others, testifying that the brother was the driver, not him. Although he and his brother apparently have a strong resemblance, the prosecution held incontrovertible evidence that the brother was in another state that day. When this contradiction was revealed, the brother fled, and upon his return refused to testify further on the grounds of self-incrimination. Calhoun changed his plea to guilty and was convicted.

While in confinement, Calhoun's affairs were managed by a fellow airman, to whom he had granted power of attorney. As the airman was attending to Calhoun's personal effects, she came across a letter from defense counsel to Keene dated just before the trial. The letter appeared to suggest that defense counsel was aware of Calhoun's intent to use the false alibi, necessitated, according to Calhoun, by the failure to locate the real driver of the car, one "Binky." The letter also indicated, however, that Calhoun had changed his mind and decided that he did not want his brother to testify, a decision defense counsel commended. Yet, contrary to the letter, as noted, the brother, did testify that he had been driving appellee's car at the time in question.

The airman delivered the letter to the Government. Because of the implication in the letter that defense counsel was aware at the time of trial that the defense was based on perjured testimony, the base staff judge advocate (SJA) asked the Air Force Office of Special Investigations to investigate defense counsel on suspicion of subornation of perjury and conspiracy to commit perjury. The base SJA consulted with the 8th Air Force SJA; together, they decided there was probable cause to seek authority to search defense counsel's office for additional evidence. The situation also called for the application of The Judge Advocate General's Policy Letter Number 24, Compelling Defense Counsel to Produce Evidence. This directive requires

---

1. Chief Judge H. Robert Mayer of the United States Court of Appeals for the Federal Circuit, sitting by designation pursuant to Article 142(f),

Uniform Code of Military Justice, 10 USC § 942(f).

that the base SJA notify either the commander of the Air Force Legal Services Agency (AFLSA) or the director of the United States Air Force Judiciary before initiating a search of a defense counsel's home or office. The record shows that the base SJA discussed the matter with the AFLSA commander. The base SJA testified that she notified and coordinated with the commander prior to the search. She did not seek his permission to search and he did not authorize one.

A military magistrate authorized the search and specifically ordered the searchers not to discuss the matter with anyone else and to seal any evidence recovered—to be opened only by a military judge. To protect the attorney-client privilege of other AFLSA clients, an investigator from another base, assisted by a reserve officer lawyer, conducted the search. A reserve military judge was brought in to review the papers seized, to determine what material was responsive to the warrant, and to dispose of the rest.

The evidence recovered in the search indicated that defense counsel had no knowledge of what really happened, because Calhoun had changed his story many times. Indeed, the "Binky" story was a fabrication. The AFLSA commander, therefore, cleared defense counsel of any wrongdoing.

Meanwhile, Calhoun retained civilian counsel, Mr. Wayne Kastl, for his Article 32, Uniform Code of Military Justice, 10 USC § 832, hearing on charges of obstruction of justice, subornation of perjury, and conspiracy to commit perjury. He also was offered a new military defense counsel detailed from another base because there was thought to be a potential conflict of interest between him and his first trial defense counsel. In view of the investigation, Calhoun refused this offer of another military defense counsel on the basis that all Air Force defense counsel, as well as any other government counsel, were subject to unlawful command influence and searches. Because of this asserted invasion of the attorney-client relationship, Mr. Kastl filed motions for extraordinary relief in the Court of Criminal Appeals and this Court demanding that the Air Force pay attorney

fees for a private civilian lawyer or terminate the court-martial. Both motions were denied.

Calhoun proceeded to trial *pro se*, acting on the advice of Mr. Kastl and the new military defense counsel, Captain Monheim, who was serving as a legal advisor because Calhoun refused to establish an attorney-client relationship with him. He was convicted and sentenced. On appeal, the Court of Criminal Appeals reversed the findings and sentence. 47 MJ 520 (1997). The Judge Advocate General of the Air Force certified four issues for our resolution.

*Issue I*

WHETHER THE AIR FORCE COURT OF CRIMINAL APPEALS ERRED IN HOLDING THAT THE AIR FORCE LEGAL SERVICE AGENCY COMMANDER'S "ROLE" IN THE SEARCH OF A DEFENSE COUNSEL'S OFFICE CREATED A REASONABLE APPEARANCE THAT ALL OTHER DEFENSE COUNSEL ASSIGNED TO AFLSA WOULD BE SUBJECT TO UNLAWFUL COMMAND INFLUENCE.

■ Calhoun claims that, because the office of his prior military defense counsel was searched by military investigators, no defense counsel employed by the Government can be free from command influence or compromising searches. Therefore, the Air Force should have appointed and paid for an independent civilian defense attorney. We review decisions pertaining to requests for counsel for abuse of discretion. *See United States v. Anderson*, 36 MJ 963, 973 (AFCMR 1993), *aff'd*, 39 MJ 431 (CMA 1994).

■ The issue is one of first impression. This Court has previously addressed the question of whether defendants who believe that government expert witnesses will not provide unbiased and objective evidence have an absolute right to government-funded independent expert witnesses of their choice. We concluded that no such right exists. *See United States v. Ruth*, 46 MJ 1, 4 (1997). We stated that whether a specific expert witness would be funded by the Government was a fact-intensive determination, requiring

consideration of factors such as the expert's qualifications, the subject matter and basis for the expert's testimony, the reliability and legal relevance of the evidence, alternatives to the expert's testimony, and whether the probable value of the testimony outweighs other considerations. *Id.* We have also emphasized that although a defendant has a right to expert assistance if needed, there is no "right to compel the Government to purchase for him any particular expert or any particular opinion." *United States v. Ingham,* 42 MJ 218, 226 (1995). Similarly, we decline to enshrine a right to private civilian counsel paid for by the Government unless an objective, disinterested observer, with knowledge of all the facts, could reasonably conclude that there was at least an appearance of unlawful command influence over all military and other government defense counsel.

We come to this view in light of substantial statutory and judicial history of such a test for recusal of judges when challenged for an appearance of conflict of interest. *See* 28 USC § 455; *United States v. Cerceda,* 139 F.3d 847, 852 (11th Cir.1998) (test for judge's recusal under § 455 is "whether 'an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality' ") (citation omitted); *United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992) (test for judge's recusal is whether "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal"); *United States v. Mitchell,* 39 MJ 131, 143 (CMA 1994) ("whether a reasonable person *who knew all the facts* might question these appellate military judges' impartiality"). We see no reason to follow a more relaxed standard for requiring the Government to pay for civilian defense counsel when the asserted disqualification of military lawyers is based on similar grounds or arguments.

■ Calhoun requested that the Air Force pay for private counsel because he says he believed that no Air Force counsel, or even counsel from other military services or other parts of the Government, could maintain a sufficient level of independence from the prosecution or the Air Force command structure. The Air Force responded by appointing Air Force defense counsel from another base, but Calhoun refused to establish an attorney-client relationship with him. Therefore, the dispositive question is whether the AFLSA commander's role in the search of defense counsel's office created an objectively reasonable concern that all other government defense counsel would be subject to unlawful command influence. We think not.

The commander's role was limited to being informed of the search and discussing it with the SJA. He had no role in seeking or authorizing it. This can hardly be construed as evidence that he would be likely to breach the attorney-client compact under other circumstances.

The search was conducted pursuant to a valid warrant, issued by a military magistrate, based on sworn testimony and probable cause. The warrant limited the search to the office of Calhoun's prior defense counsel, and to documents that were related to the prior trial. The Air Force took extraordinary precautions to ensure that only independent personnel would be involved in searching the office and reviewing the materials taken.

An objective, disinterested observer with full knowledge of the circumstances could only conclude from these facts that Calhoun's prior attorney was the sole target of the investigation, and that other lawyers in the office, and their clients' confidential information, would be protected from search. There is no basis for disqualifying any other Air Force lawyer, much less lawyers from other services or other government entities.[2]

---

**2.** Calhoun also complains that the prosecutor and his paralegal from the first trial were reassigned to defense counsel's office before his second trial. Yet, trial counsel and defense counsel are routinely rotated within AFLSA, and there is no evidence that the former prosecutor here had any involvement with Calhoun's subsequent trial.

*Issue II*

WHETHER THE AIR FORCE COURT ERRED IN HOLDING THAT MR. KASTL WRONGFULLY WITHDREW FROM REPRESENTING APPELLEE, TO THE PREJUDICE OF APPELLEE.

■ This Court held in *Ingham*, 42 MJ at 223, that analyses of claims of ineffective assistance of counsel, military or civilian, use the two prongs of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Defense counsel is presumed effective unless proven otherwise. *United States v. Gibson*, 46 MJ 77, 78 (1997). And the burden of proof lies with the defendant. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

■ At the trial, both Mr. Kastl and Captain Monheim advised Calhoun to reject appointed military defense counsel so as not to waive the extraordinary writ issue, and the military judge thoroughly cautioned him about the likely ramifications of a decision to proceed *pro se*. Calhoun admitted, however, that "[a]t one point, shortly before the scheduled trial date, Mr. Kastl said he'd be willing to go in and represent me, but he strongly recommended that I go in alone instead." Mr. Kastl's expressed willingness to represent Calhoun at trial undercuts the conclusion that he improperly and unilaterally withdrew representation. On the contrary, based on this advice, in a reasoned and informed decision about his own defense, Calhoun opted to represent himself, with Captain Monheim acting only as a "legal consultant." Consequently, Calhoun expressly released Mr. Kastl from any obligation that might have been inferred from the circumstances.

Furthermore, in light of the overwhelming evidence of guilt, the recommendation to appear *pro se* in order to preserve the extraordinary writ issue cannot be said to be a failure "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Any duty Mr. Kastl may have had towards Calhoun was satisfied. We need not examine the second prong of the *Strickland* test in light of our conclusion. The Air Force Court of Criminal Appeals erred in holding that Mr. Kastl wrongly withdrew representation from appellee.

*Issue III*

WHETHER THE AIR FORCE COURT ERRED IN HOLDING THAT MR. KASTL CREATED A CONFLICT OF INTEREST BY MAKING HIS CONTINUED REPRESENTATION CONTINGENT ON PAYMENT OF HIS FEES.

■ Allegations of conflicts of interest during ineffective assistance of counsel inquiries are reviewed *de novo*. *See United States v. Smith*, 44 MJ 459, 460 (1996). To carry his burden of proving a Sixth Amendment violation resulting from a conflict of interest, Calhoun must show that there was an actual conflict of interest, and that the conflict adversely affected counsel's performance. *See United States v. Smith*, 36 MJ 455, 457 (CMA 1993).

■ Conflicts of interest are presumed to exist in cases where counsel represents more than one client. *See id.* They are not presumed, however, in cases where counsel's and the client's interests may be discordant. *See United States v. Washington*, 42 MJ 547, 553 (A.F.Ct.Crim.App.1995). Calhoun now alleges the latter situation, arguing that Mr. Kastl was more concerned with convincing the Government to pay his fees (via the writ strategy) than with providing the best possible defense. We believe that, although Mr. Kastl's strategy was unsuccessful, it did not result from a conflict of interest attributable to a fee agreement or any other financial claim. The record shows that since he had essentially no defense to the substantive charges, Mr. Kastl knew that military repre-

sentation would result in a conviction with no basis for appeal. By recommending that Calhoun refuse to accept military counsel, they maintained grounds, however dubious, for attaining review.

Mr. Kastl's representation was not a contingent fee arrangement. The objective of the extraordinary writ was to have the case dismissed, in which case Mr. Kastl would not have been paid for trial, or failing that, to pay for *any* civilian counsel. Indeed, Calhoun corrected the military judge during the motions hearing under Article 39(a), UCMJ, 10 USC § 839(a), to emphasize that his goal was to secure any non-government lawyer, not necessarily Mr. Kastl. There was no conflict of interest.

## Issue IV

WHETHER THE AIR FORCE COURT ERRED IN DENYING APPELLEE'S REQUEST FOR MR. KASTL TO REPRESENT HIM ON APPEAL.

In light of the above discussion of Mr. Kastl's machinations and his personal interests in the case, it strikes us as a prudent exercise of discretion for the Air Force Court to deny Calhoun's request that Mr. Kastl represent him on appeal. The record shows he was ably represented by military counsel.

## DECISION

The decision of the United States Air Force Court of Criminal Appeals is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for further review.

Chief Judge COX and Judges SULLIVAN, CRAWFORD, and GIERKE concur.