UNITED STATES, Appellee,

v.

John M. McCLAIN, Jr., Specialist,
U.S. Army, Appellant.

No. 98–0752.
Crim.App. No. 9501831.

U.S. Court of Appeals for
the Armed Forces.

Argued April 6, 1999.

Decided July 14, 1999.

CRAWFORD, J., delivered the opinion of the Court, in which COX, C.J., and SULLIVAN, GIERKE, and EFFRON, JJ., joined.

For Appellant: *Captain Scott A. De La Vega* (argued); *Colonel John T. Phelps, II, Lieutenant Colonel Adele H. Odegard,* and *Captain Kirsten V. Campbell–Brunson* (on brief); *Captain Paul Fiorino.*

For Appellee: *Captain Joseph A. Pixley* (argued); *Colonel Russell S. Estey, Lieutenant Colonel Eugene R. Milhizer,* and *Captain Mary E. Braisted* (on brief).

Judge CRAWFORD delivered the opinion of the Court.

Consistent with his pleas, appellant was convicted of conspiracy (4 specifications) and submitting fraudulent claims (19 specifications), in violation of Articles 81 and 132, Uniform Code of Military Justice, 10 USC §§ 881 and 932, respectively. Contrary to his pleas, he was convicted of conspiracy (3 specifications), and also of larceny (19 specifi-

cations), in violation of Article 121, UCMJ, 10 USC § 921. A military judge, sitting alone as a general court-martial, sentenced him to a dishonorable discharge, 8 years' confinement, total forfeitures, and reduction to E-1. The convening authority approved the sentence as adjudged, and the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion. We granted review of the following issue raised by appellate defense counsel:

WHETHER THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY STATED THAT "SPECIALIST MCCLAIN HAS TOLD LIES HERE TODAY IN COURT" AFTER THE APPELLANT HAD SOUGHT THE RELEASE OF COUNSEL, AND THEREAFTER APPELLANT'S LAWYERS NEVER EXPLAINED AN AVAILABLE INSANITY DEFENSE TO THE APPELLANT BEFORE HE ENTERED HIS PLEAS.

and the following issue personally asserted by appellant:

WHETHER THE MILITARY JUDGE COMMITTED ERROR BY DELAYING, UNTIL AFTER THE PROVIDENCE INQUIRY, A RULING ON THE RELEASE OF COUNSEL WHERE THE APPELLANT CHANGED HIS PLEA AND PLED GUILTY WITHOUT THE BENEFIT OF A PRETRIAL AGREEMENT, WHERE ASSIGNED COUNSEL REPEATEDLY SOUGHT HIS RELEASE FROM THE CASE, WHERE THE INDIVIDUALLY REQUESTED MILITARY COUNSEL WAS ADMITTEDLY UNPREPARED TO PROCEED DESPITE NEARLY 10 MONTHS PREPARATION TIME, AND WHERE THE APPELLANT WAS A DIAGNOSED PARANOID SCHIZOPHRENIC TAKING MEDICATION AT THE TIME OF TRIAL.

For the reasons delineated below, we affirm.

## FACTS

Appellant is a 25-year-old, married soldier with approximately 7 years of active service. For 4 years prior to trial, he was assigned to the 598th Maintenance Co. at Fort Benning, Georgia. There, appellant discovered that the finance office on post was not closely monitoring the processing of claims for "Do It Yourself" (DITY) moves and was not following up to recoup advance payments when the required documentation was not submitted. Over a period of slightly more than a year, appellant submitted twenty DITY move applications, claimed and accepted advance payments for those moves, and was never challenged or subjected to recoupment when he did not file the required paperwork to substantiate that the moves were made. Appellant shared his knowledge with several other soldiers, telling them of the ease of obtaining money through false DITY move claims and the likelihood of not being caught. Appellant supplied the necessary paperwork to the soldiers, showed them how to fill out the paperwork, escorted them to the finance office, and accepted a portion of the money they received as a result of their false claims. Appellant succeeded in defrauding the government of thousands of dollars.

The charges against appellant were preferred on January 3, 1995. Appellant's request to be represented by an African–American field grade officer, regardless of the branch of service, could not be fulfilled. He then requested that "the highest possible ranking" defense counsel, regardless of race, be detailed. In addition to being represented by his appointed counsel, Captain (CPT) Mieth, he was assigned Major (MAJ) Moran as his individual military counsel (IMC) on January 31, 1995.

From January 31 to February 7, 1995, appellant was treated in a military psychiatric ward. He was diagnosed as a paranoid schizophrenic, but was released back to duty. He performed his duties until the time of trial. A sanity board was requested on March 6, 1995. The board found that, despite his mental disease or defect, appellant was "able to appreciate the nature and quality or wrongfulness of his conduct." The board also concluded that he had "sufficient mental capacity to understand the nature of the proceedings against him and to conduct and to cooperate intelligently in his defense."

He was prescribed medication to treat his symptoms.

On September 22, 1995, appellant offered to plead guilty pursuant to a pretrial agreement. The convening authority accepted the offer. Trial was scheduled for October 2, 1995. On September 30, 1995, appellant withdrew from the pretrial agreement. Later that same day, appellant was again admitted to the psychiatric unit when he was allegedly found running around his yard naked, carrying a frying pan. After a day's observation, appellant was released back to his unit. The treating physician concluded that he was feigning his symptoms. A military magistrate cited as an example of his malingering an anecdote that, while pending investigation and trial, appellant told a friend that he would "act crazy before he ever went to jail."

At a pretrial confinement hearing, Lieutenant Colonel (LTC) Hirsch, an Army psychiatrist who had treated and counseled appellant, informed the military magistrate that he had diagnosed appellant as having paranoid schizophrenia. LTC Hirsch also opined that appellant was feigning symptoms of mental disorder. In addition, LTC Hirsch related that appellant's conduct of running around the yard naked was inconsistent with appellant's diagnosed disorder. The day after appellant was admitted to the psychiatric ward, his symptoms disappeared.

On the morning of October 2, 1995, LTC Hirsch and a civilian psychiatrist, Dr. Meritt, examined appellant and found him to be normal. He was then arraigned and pled not guilty to all offenses. Appellant was granted a continuance in his court-martial until October 18, 1995.

Prior to this session, appellant wrote the military judge a handwritten note, made a part of the record, in which he claimed his lawyers were "conspiring [with trial counsel] against [him] to obstruct [his] case." When the trial reconvened, appellant elected to be tried by military judge alone and reiterated his desire to dismiss his counsel. Appellant informed the judge that CPT Mieth would not properly defend him and that he disagreed with decisions made by his defense team.

During a session that lasted approximately 1 hour, appellant complained that his lawyers were not working for him and had not called witnesses for the investigation under Article 32, UCMJ, 10 USC § 832. When asked to what witnesses appellant was referring, he indicated that he wanted "[t]he whole Finance system of the Army." The prosecutor interjected that they were not charging appellant with being the ring leader, although approximately eleven people who were coconspirators had already been tried on the same offenses. Defense counsel, CPT Mieth, stated:

Specialist McClain has also articulated to me on a number of occasions that there has been a fundamental betrayal of his trust, that he feels we have lied to him, that we have taken action in his case directly contrary to his best interest and his desires. For instance sir, without disclosing a confidence but in the letter which you've already marked, the handwritten letter, Specialist McClain claims that my request for your review of Captain Wadsworth's decision approving pretrial confinement was over his objection, that despite my statements to the contrary he never consented to your reviewing the documents and making a decision without getting on the record at a 39(a) session. There are other examples which I do not want to disclose to the court without getting into the attorney/client privilege that Specialist McClain has stated to me on a number of occasions, so aside from disregarding his instructions with respect to some decisions where he has the final call, he, again sir, I'm just recapitulating his views, not what I believe my views to be of the actual facts in this case; Specialist McClain feels both Major Moran and I have lied to him, we have betrayed his trust, that we are for whatever motivation not acting in his best interest, that we were either deficient, derelict, or incompetent in properly investigating his case, and he has articulated these to me perhaps in a more direct or different way then he is

trying to articulate his complaints to you right now.

Appellant responded:

> [M]y attorney's [sic] do not have anything at stake with me. They're going to get paid whether they win this case or not. If I get prosecuted in the case, I go to jail, they go home and turn the television on. . . .

Appellant said that the attorneys also told him, "[W]e don't care what you do," and that he "refuse[d] to have these attorneys represent [him] with all due respect to them." CPT Mieth indicated that appellant refused to work with him or MAJ Moran.

In fact, appellant thought that the appointment of MAJ Moran was "a racist thing against [him]." After further discussions with the judge, appellant said he was "set up." The judge found that appellant was aware of his right to counsel for a considerable period of time, *i.e.*, 10 months, and refused to grant a delay to allow appellant to obtain another counsel. Appellant asked the judge if that meant that he had to represent himself, to which the judge replied, "No." The judge told appellant it would be "a huge mistake if you decide to represent yourself." The judge patiently advised appellant as to the drawbacks of self-representation, similar to the advice we recommended in *United States v. Mix*, 35 MJ 283, 289–90 (CMA 1992). After hearing appellant's complaints, defense counsel spoke up:

> Specialist McClain accuses me of on [sic] at least two counts of criminal dereliction of duty. One allegation was that I am, as I recall his allegation, specifically corroborating [sic] the trial counsel to obstruct justice in his case, somehow that I am in cahoots with the Government directly opposed to his interest. He also in the same letter claimed that I brought the pretrial confinement review motion to you over— without his consent, and lied to you in

effect by asking that it be considered on brief rather than on the record at a 39(a) session. There are other allegations against me Specialist McClain has communicated to me and to family members, for instance that I don't want to discuss here specifically since that would intrude on privileged communication, and it seems to me that I have a duty to my client to avoid him doing things that are even more against his interest than what he's doing already, sir, and I suspect that my continued involvement in this case would for whatever reason prompt Specialist McClain to do things that are even more against his best interest, motivate him even further to make the wrong decisions. I have to admit that I am also concerned for how my participation may come across in court not only for any actual conflicts of interest but appearance of a conflict of interest, and frankly sir I am concerned for my own well being. Specialist McClain has told you lies here today in court. I don't feel that by my staying on the case that I would somehow be indirectly a part of that process and for my interest, for my client's interest, for the interest of justice I think that I need to be released.[1]

The military judge took appellant's request to release appointed counsel under advisement. He also deferred ruling on appellant's request to represent himself. However, the military judge later stated to appellant that he was inclined to release detailed defense counsel because of the "seriousness of the allegations" that appellant made against him.

The IMC requested a 3–day continuance to prepare for the trial, without objection by trial counsel. The military judge granted that defense request.[2]

Following further discussion, to include discussion of other matters, and a short recess, the military judge asked appellant to enter pleas again. Appellant responded by

---

1. Later, during argument on findings, detailed defense counsel addressed the subject of appellant's "honesty" by stating, "Specialist McClain was open and honest [during the providence inquiry]. I mean after the initial agitation and so forth, he came clean, Your Honor."

2. Detailed defense counsel later withdrew the request for a continuance stating, "I am prepared to proceed both with a contested case at this point, and sentencing, as is Major Moran, we would not need a delay until Saturday."

asking the military judge for permission to speak with trial counsel. The military judge advised appellant of the danger of self-incrimination if he chose to speak with trial counsel and then granted a brief recess, following which, as "instructed" by appellant, detailed defense counsel entered extensive pleas of guilty. Thereafter, the military judge "denied" detailed defense counsel's request to be released ("I am specifically not deciding to dismiss you") and granted counsel leave to "alert" the judge later if the need arose to renew the request.

Before accepting appellant's pleas, the military judge ensured that appellant truly wanted to plead guilty. Appellant confirmed that he had had the opportunity to consult with counsel in making his decision to plead guilty and confirmed that he had had enough time to consider his options and make up his mind.

Appellant then announced spontaneously, "I want my attorney's [sic]." When the military judge asked appellant what he meant, appellant replied, "I'm this far in this far and I want to get it over with ... so whatever happened is happened, but I want Captain Mieth and Major Moran to finish this case for me." Appellant then confirmed that he believed both his defense counsel had his "interest at heart." Appellant stated that he could see that CPT Mieth was not lazy and was doing what was best for him: "I see that now, sir. I didn't see it [before]." Appellant repeated his desire to plead guilty.

Appellant withdrew his allegations that detailed defense counsel conspired with trial counsel. Appellant reassured the military judge that he wanted both of his appointed counsel to continue representing him. Appellant acknowledged that much of his earlier criticism of counsel was due to "agitation," under the circumstances. After assurances from detailed defense counsel that he would do everything in his power to obtain the best results for appellant, the military judge granted appellant's request to have both appointed counsel remain on the case. Later, in an unsworn statement on sentencing, appellant stated, "I would like to apologize to my attorneys for the wrong accusation made against them. I would like to thank them for representing me to their fullest capabilities."

## DISCUSSION

■ The defense and the Government agree that the standard of review as to ineffectiveness of counsel is *de novo. United States v. Wean,* 45 MJ 461, 463 (1997); *United States v. Murray,* 42 MJ 174, 178 (1995); *see also United States v. Calhoun,* 49 MJ 485, 489 (1998).

The defense contends that the antagonistic relationship between appellant and his trial defense counsel was derivative of the threats made by the trial lawyer to withdraw. The defense notes that CPT Mieth "unfortunately chose the personal attack method." Final Brief at 10.

The Government contends counsel were not ineffective. As to the statement by defense counsel that appellant lied at trial, the Government asserts that that was in response to appellant's own statement. The Government also notes that appellant withdrew his allegation as to personal and professional misconduct, and that the judge recognized that counsel were competent in representing appellant to the utmost of their abilities. The Government also rejects the claim that defense counsel never explained the insanity defense to appellant. They had specifically requested a sanity board and told the judge that appellant had been diagnosed a paranoid schizophrenic. Their conclusions not to raise incompetency or sanity were supported by the experts. The Government argues that, based on the record, it is clear that "appellant was alert, involved, and responsive during the entire proceedings." Answer to Final Brief at 21. As to the claim of failure to advise appellant about pleading without a pretrial agreement, the Government notes that appellant had a pretrial agreement from which he withdrew.

■ The Sixth Amendment guarantees an appellant the right to the effective assistance of counsel. The right to effective counsel means the right to counsel who is conflict free. *Cuyler v. Sullivan,* 446 U.S. 335, 345, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). To

demonstrate a Sixth Amendment violation, an appellant "must establish [1] ... an actual conflict of interest [that 2] adversely affected his lawyer's performance." *Id.* at 350, 100 S.Ct. 1708.

This case does not involve a conflict caused by successive representation of individuals involved in the same misconduct or simultaneous representation of codefendants. The question of the conflict here arises because of a difference of opinion as to strategy. Appellant had the advantage of attending a number of his coconspirators' trials. Absent a lack of mental responsibility, which had been negated by experts, the best available option would be for appellant to enter into a plea agreement. *See United States v. Lonetree,* 35 MJ 396, 413–14 (CMA 1992) (counsel may be ineffective in not advising accused of the right to enter into pretrial agreement). The judge correctly advised appellant regarding the options he had as to pleading, the forum, whether to accept a plea agreement, and whether to testify.

▮▮▮ The defense does not address the fact that it was appellant who said that MAJ Moran had lied to him and that his detailed counsel had conspired with trial counsel. Generally, a defense counsel can respond to a defendant's assertions. *United States v. Baldwin,* 987 F.2d 1432, 1438 (9th Cir.1993).

**3.** All Manual provisions are cited to the version in effect at the time of trial. The 1998 version is

However, the defense argues that the judge abused his discretion in failing to halt the proceeding to resolve the representation issue. When there is a claim of ineffectiveness, counsel need not stand mute. Mil. R.Evid. 502(d)(3), Manual for Courts–Martial, United States (1995 ed.),[3] provides that, when there is an allegation of a breach of a duty, there is not a complete attorney-client privilege. *Cf. United States v. Dupas,* 14 MJ 28, 30 (CMA 1982). In the context of this case, defense counsel would have been permitted to tell the judge that they had advised appellant to plead guilty because of the Government's evidence, including the testimony of all the coconspirators. They also might have told the judge that they advised appellant of his obligation to be truthful to the tribunal, and that there were ways they could continue to represent him even if he insisted on testifying untruthfully. *See Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *United States v. Polk,* 32 MJ 150 (CMA 1991). Putting this information on the record would have negated the issues in this case. However, we hold that based on the totality of circumstances in this case, appellant waived any conflict of interest.

The decision of the United States Army Court of Criminal Appeals is affirmed.

unchanged, unless otherwise indicated.