UNITED STATES, Appellee,

v.

Sergeant Billy E. CAIN, United States Army, Appellant.

ARMY 9800797.

U.S. Army Court of Criminal Appeals.

21 Oct. 2002.

**734**

For Appellant: Colonel Adele H. Odegard, JA; Major Jonathan F. Potter, JA; Captain Thomas J. Barrett, JA (on brief); Colonel Adele H. Odegard, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Mary E. Card, JA (on brief following *DuBay* hearing).

For Appellee: Lieutenant Colonel Edith M. Rob, JA; Major Anthony P. Nicastro, JA; Captain Arthur L. Rabin, JA (on brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Paul H. Turney, JA; Major Paul T. Cygnarowicz, JA (on brief following *DuBay* hearing).

Before MERCK, Senior Judge, CURRIE, Senior Judge, and CARTER, Appellate Military Judge.

OPINION OF THE COURT

CURRIE, Senior Judge:

A military judge, sitting as a general court-martial, convicted appellant, pursuant to his pleas, of indecent assault (two specifications), in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. Appellant was sentenced to a dishonorable discharge, confinement for five years, forfeiture of all pay and allowances, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dishonorable discharge, confinement for twenty-four months, forfeiture of all pay and allowances, and reduction to Private E1. This case is before the court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

In his initial brief, appellant alleged that his lead trial defense counsel, Major (MAJ) S, had a coerced, homosexual relationship with him, which denied him effective assistance of counsel. As we were unable to resolve the facts underlying appellant's allegations from the record of trial, we ordered that a hearing be conducted pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967), and that the presiding military judge make findings of fact and conclusions of law on the following two issues raised by appellant:

**I**

WHETHER APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHERE A COERCED HOMOSEXUAL RELATIONSHIP EXISTED BETWEEN THE APPELLANT AND THE LEAD TRIAL DEFENSE COUNSEL CREATING AN ACTUAL CONFLICT OF INTEREST.

**II**

WHETHER THE APPELLANT WAS DENIED HIS FUNDAMENTAL RIGHT TO CONFLICT–FREE COUNSEL WHERE THE LEAD DEFENSE COUNSEL COERCED THE APPELLANT INTO A SECRETIVE HOMOSEXUAL RELATIONSHIP WITH HIM THEREBY UNDERMINING APPELLANT'S PLEAS OF GUILTY TO THE OFFENSES TO WHICH THE APPELLANT NOW STANDS CONVICTED.

The *DuBay* hearing was conducted on 14 May 2001. On 16 July 2001, the military judge published his findings of fact, which we adopt, and conclusions of law.

### FINDINGS OF FACT

We agree with the *DuBay* military judge that MAJ S and appellant had a consensual sexual relationship which did not create a conflict of interest denying appellant effective assistance of counsel. Pursuant to Arti-

cle 66(c), UCMJ, we make the following findings of fact:

1. Appellant was a thirty-three year old sergeant (E5) with more than twelve years of service at the time of his court-martial. He had a GT score of 112 and a two-year Associate's Degree.

2. Appellant committed the offenses to which he ultimately pleaded guilty in August 1993 and February 1995. At the time of the first offense, appellant was assigned to the Reserve Officers' Training Corps (ROTC) Department, Norwich University, Vermont. Appellant invited JM, a student at Norwich, to his apartment as a prospective roommate. Appellant gave him beer, which he drank until he fell asleep. While JM slept, appellant opened JM's pants to expose his penis and performed fellatio on him. JM did not consent to appellant's conduct.

3. In February 1995, appellant invited PH and his brother, CH, both eighteen-years old, to his apartment. Appellant offered both boys alcohol, which they drank to excess. Appellant told PH to "crash" on his bed. Sometime later, CH passed out in appellant's living room. Early the next morning, appellant went into his bedroom; saw that PH, wearing boxer shorts, had an erection; and performed oral and anal sex on him. When PH began to awake, appellant stopped. PH did not consent to appellant's conduct.

4. On 15 October 1997, three specifications of forcible sodomy were preferred against appellant; two of the specifications were based on appellant's conduct with JM and PH. Major S, Senior Defense Counsel, U.S. Army Trial Defense Service (TDS), XVIII Airborne Corps and Fort Bragg Field Office, Fort Bragg, North Carolina, detailed himself to appellant's case.

5. On 3 December 1997, an Article 32, UCMJ, hearing was conducted at Fort Devens, Massachusetts. Major S represented appellant. On 18 December 1997, the charge and its specifications were referred to a general court-martial.

6. Major S entered into a consensual sexual relationship with appellant shortly before the Article 32, UCMJ, hearing. It lasted to the conclusion of appellant's court-martial about six months later.

7. Appellant told several people about his relationship with MAJ S and that he wanted to end it, to include his mother, a friend, a staff member for the Servicemembers Legal Defense Network, and two civilian attorneys. Appellant told them that he continued the relationship only because he wanted MAJ S—who he considered to be an excellent, dynamic, and aggressive attorney—to continue to represent him. He also thought that since MAJ S was gay, like himself, he would fight even harder on his behalf. Both civilian attorneys told appellant that MAJ S's behavior was unethical and illegal and that he should fire him. Appellant did not want to follow their advice because he believed that MAJ S was the best military defense counsel available to him; he could not afford a civilian defense counsel; and he thought that without MAJ S's representation, he risked conviction and a lengthy jail sentence.

8. Appellant never told MAJ S that he had any reservations about their relationship. As he testified at the *DuBay* hearing, "[N]ot once did I protest what he was doing to me or what he had me do to him."

9. In late January 1998, MAJ S, at appellant's request, detailed Captain (CPT) L to appellant's case. Appellant told CPT L that he thought highly of MAJ S, but that the government had two prosecutors at the arraignment, and he felt he was entitled to the same.

10. Several Article 39(a), UCMJ, sessions were held in January, February, and March 1998, concerning appellant's attempts (ultimately unsuccessful) to secure civilian counsel. Appellant never expressed dissatisfaction with either MAJ S or CPT L during these sessions.

11. Appellant told MAJ S and CPT L that he did not engage in any sexual activity without JM's and PH's consent, and that he would not plead guilty to forcible sodomy. Major S also wanted to fight the charges because of the age of the charges, the victims' credibility problems, and the possible bias of appellant's command for his whistleblower activities. Captain L, however, after

thoroughly familiarizing himself with the evidence, believed that conviction was probable and that appellant faced substantial confinement because of the nature of the offenses: an "ROTC NCO charged with sexually preying on troubled young men." Major S and appellant eventually agreed.

12. Captain L initiated negotiations with the government regarding a possible pretrial agreement only after first discussing the matter with appellant and obtaining his consent. Negotiations occurred over approximately ten days before trial. Captain L and MAJ S repeatedly consulted with appellant during the negotiations.

13. On 2 June 1998, pursuant to a pretrial agreement, appellant entered pleas of guilty to two specifications of indecent assault, in violation of Article 134, UCMJ, as lesser-included offenses of the alleged forcible sodomies against JM and PH. In return for appellant's guilty pleas, the convening authority agreed to direct the trial counsel to move the military judge to dismiss the remaining specification of forcible sodomy; to approve no sentence in excess of a dishonorable discharge, twenty-four months confinement, forfeiture of all pay and allowances, and reduction to Private E1; to disapprove any fine; and to defer any sentence to confinement for a period not to exceed seven days. The military judge conducted a thorough inquiry into appellant's pleas in accordance with *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969). Appellant's responses, made under oath, were consistent with his pleas and the stipulation of fact.

14. On 6 June 1998, appellant's parents, without his knowledge, wrote the convening authority a letter alleging, inter alia, that MAJ S "pressure[d their son] for sexual favors."

15. On 16 June 1998, the Staff Judge Advocate (SJA), XVIII Airborne Corps, showed the letter to Lieutenant Colonel (LTC) F, Executive Officer, TDS, who was at Fort Bragg investigating an unrelated matter.

16. On 18 June 1998, LTC F told MAJ S of the allegation. Major S killed himself early the next morning. In an audio recording MAJ S made immediately before his suicide, he "fully den[ied] that [he] ever forcibly had sex with [appellant]" and stated his "suicide is not an admission of guilt."

17. On 28 September 1998, CPT H, appellant's detailed counsel for submission of post-trial matters, asked the convening authority to direct a post-trial Article 39(a), UCMJ, session to explore the allegations against MAJ S. On 2 November 1998, the convening authority, adopting the advice of his SJA, denied the request.

## DISCUSSION

### Standard of Review

■ "Allegations of conflicts of interest during ineffective assistance of counsel inquiries are reviewed *de novo*." *United States v. Calhoun*, 49 M.J. 485, 489 (1998) (citing *United States v. Smith*, 44 M.J. 459, 460 (1996)); *see United States v. McClain*, 50 M.J. 483, 487 (1999).

### Law

The Sixth Amendment guarantees that an accused shall have the "Assistance of Counsel for his defence." Article 27, UCMJ, 10 U.S.C. § 827, requires that an accused be detailed defense counsel when tried by a general or special court-martial. Counsel's assistance must be effective. *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Russell*, 48 M.J. 139, 140 (1998). An accused has been deprived of effective assistance of counsel if counsel's performance was "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052, and if the accused thereby was prejudiced, i.e., the accused has demonstrated "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052.

■ The right to effective counsel includes a "correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097,

67 L.Ed.2d 220 (1981) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)); *see McClain*, 50 M.J. at 487–88. An actual conflict of interest exists if a lawyer's own interests materially limit the representation of his or her client. Army Reg. 27–26, Legal Services: Rules of Professional Conduct for Lawyers, Rule 1.7(b) (1 May 1992); *see* Model Rules of Professional Conduct Rule 1.7(b).

Where the alleged ineffective assistance arises from a conflict of interest, we apply the two-pronged test of *Cuyler*. Specifically, an accused "who raised no objection at trial must demonstrate [ (1) ] that an actual conflict of interest [ (2) ] adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 100 S.Ct. 1708; *see Strickland*, 466 U.S. at 692, 104 S.Ct. 2052; *United States v. Hicks*, 52 M.J. 70, 72 (1999); *United States v. Thompson*, 51 M.J. 431, 434–35 (1999); *United States v. Babbitt*, 26 M.J. 157, 159 (C.M.A. 1988). If both elements are satisfied, prejudice is presumed because "[i]n those circumstances, counsel breaches the duty of loyalty, ... [and] it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052.

■ The *Cuyler* standard is slightly modified in guilty plea cases:

> The primary question in the guilty plea context is whether the plea was a "voluntary and intelligent choice." Thus, in order to successfully assert a claim of ineffective assistance of counsel based upon a conflict of interest, [an appellant] who entered a guilty plea must establish: (1) that there was an actual conflict of interest; and (2) that the conflict adversely affected the voluntary nature of the guilty plea entered by [appellant].

*Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.1987) (citation and footnote omitted).

Appellant bears the burden of proof. *Hicks*, 52 M.J. at 72. In particular, appellant "must point to specific instances in the record to suggest an actual conflict ... [and] must demonstrate that the attorney made a choice between possible alternative courses of action" to appellant's detriment. *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996); *see United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir.1983) (citing *Foxworth v. Wainwright*, 516 F.2d 1072, 1077 n. 7 (5th Cir.1975) (there is no violation if the conflict is merely irrelevant or hypothetical; there must be an "actual, significant conflict")).

■ An accused may waive the right to conflict-free representation. Such a waiver, to be effective, must be made voluntarily, knowingly, and intelligently with sufficient awareness of the relevant circumstances and likely consequences. *See United States v. Henry*, 42 M.J. 231, 237 (1995). Therefore, if appellant did not knowingly waive his right to conflict-free counsel, he is entitled to relief only if he demonstrates that MAJ S's interests actually conflicted with his own and that the conflict adversely affected MAJ S's representation of him and the voluntary nature of his pleas.

### No Actual Conflict Existed

■ We first note that an attorney's sexual relations with a client do not create a per se actual conflict of interest that violates the client's Sixth Amendment right to effective assistance of counsel. *Babbitt*, 26 M.J. at 159. Captain Babbitt's civilian defense counsel, who was married, had sexual intercourse with her the night before the final day of her court-martial. *Id.* at 158–59. Our superior court not only rejected a per se rule, but noted that, under the facts of that case, the trial defense counsel's " 'preparation and presentation of his client's defense was, if anything, spurred on by his relationship with appellant.' " *Id.* at 159 (quoting the lower court at 22 M.J. 672, 677–78 (A.C.M.R.1986)).

Appellant asserts *Babbitt* differs from his case because Babbitt's defense counsel's conduct was merely unethical while sodomy is criminal in the military. UCMJ art. 125, 10 U.S.C. § 925; *United States v. Scoby*, 5 M.J. 160, 163 (C.M.A.1978); *United States v. Jones*, 14 M.J. 1008, 1011 (A.C.M.R.1982). Appellant argues for a per se rule that MAJ S "created an actual conflict of interest [that adversely affected his performance] when he engaged in criminal conduct with his client."

■ We decline to adopt a per se "criminal conduct" rule. Generally, the criminal conduct of a defense counsel creates an actual conflict of interest only when "there is a danger that the defense attorney would ineffectively represent his client because of fear that authorities might become aware of the attorney's own misconduct if he undertook effective representation." *United States v. Balzano*, 916 F.2d 1273, 1293 (7th Cir.1990); *see also United States v. Saccoccia*, 58 F.3d 754, 771–72 (1st Cir.1995). For example, an actual conflict occurs when an attorney becomes entangled in the criminal conduct charged against his client, "has independent personal information regarding the facts underlying his client's charges, and faces [himself] potential liability for those charges...." *Gov't of the Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir.1984). Also, when an attorney is accused of or under investigation for crimes similar or related to those of his client, an actual conflict may exist "because the potential for diminished effectiveness in representation is so great." *Mannhalt v. Reed*, 847 F.2d 576, 581 (9th Cir.1988); *see Briguglio v. United States*, 675 F.2d 81 (3d Cir.1982) (actual conflict where defense counsel was under investigation by the same United States Attorney's office that was prosecuting the defendant). In egregious cases where the defendant is unaware of the conflict created by the attorney's criminal activities, some courts have found a per se violation of the Sixth Amendment because of the risk that a vigorous defense could lead to exposure of the counsel's criminal conduct. *See, e.g., United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984)(per se Sixth Amendment violation where defendant was unaware of conflict created by his attorney's criminal conduct with defendant's co-conspirator); *Solina v. United States*, 709 F.2d 160, 164 (2d Cir.1983)(defendant per se denied right to counsel where he was unaware that unlicensed counsel represented him in violation of the law as counsel was not "wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials").

■ Major S did not risk or fear exposure by aggressively and effectively representing appellant. His conduct, while in some respects similar to the charges appellant faced, was unrelated to appellant's crimes. Before and during appellant's trial, MAJ S was neither accused of nor investigated for having an improper relationship with appellant. He had no reason to believe anyone other than appellant knew of their relationship. Undoubtedly, MAJ S wanted his relationship with appellant to remain secret. Even the mere allegation of impropriety by appellant posed enormous professional and personal risks to MAJ S. The best way to maintain appellant's confidence required that MAJ S represent appellant's interests to the utmost of his abilities, and that appellant know of MAJ S's efforts on his behalf. A disgruntled client would be incompatible with MAJ S's interests. In short, not only did MAJ S and appellant's interests not conflict, in some respects, they converged. *See Babbitt*, 26 M.J. at 159.

### Waiver

■ Regardless, we hold appellant knowingly waived any potential or actual conflict of interest. The question is whether appellant intentionally relinquished or abandoned his fundamental right to conflict-free counsel, i.e., whether someone, at some point, "laid out for appellant at least the basic ramifications and pitfalls of the arrangement so that he could make informed judgments as to (1) whether his counsel had a conflict of interest in the first place and (2) if so, whether he wished to waive the right to conflict-free counsel." *Henry*, 42 M.J. at 237 (citing *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Holloway*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426; *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. 464 (1938)). The answer is yes.

This case is in sharp contrast to those that denied waiver on the ground that counsel's behavior was unknown to the client. *See, e.g., United States v. McLain*, 823 F.2d 1457 (11th Cir.1987); *Briguglio*, 675 F.2d 81. Appellant sought and received independent legal advice. Both civilian attorneys with whom he discussed the matter told him point-blank that MAJ S's conduct was uneth-

ical and illegal and that he should release MAJ S. One attorney told him that MAJ S's conduct could "impair [MAJ S's] objectivity with regard to his representation of" appellant. The other told him it could be the basis of a motion to dismiss the charges. Appellant's response to this advice was consistent: he wanted MAJ S to continue to represent him because he believed him to be the best military attorney available.

Appellant also knew of his right to request different military counsel of his own choice, as the military judge told him at his arraignment. *See United States v. Spriggs*, 52 M.J. 235, 237–38 (2000). Appellant also asked for and obtained additional military counsel. In addition, "before his guilty pleas were accepted and during the review of his pretrial agreement, the appellant, under oath, told the judge that he was satisfied with his counsels' advice." *United States v. Dorman*, 57 M.J. 539, 543 (A.F.Ct.Crim.App.2002). Appellant knew what he was doing when he made his choice.

### No Adverse Affect on Defense Team's Performance

■ Even if MAJ S labored under an actual conflict of interest which appellant did not waive, appellant was not prejudiced as he has not demonstrated that the conflict adversely affected the voluntary nature of his pleas or the performance of his defense team. Nothing in the record indicates that any conflict of interest adversely affected appellant's defense team's performance, appellant's decision to plead guilty, or the terms and conditions of appellant's guilty plea. Major S aggressively represented appellant from preferral to trial. During the Article 32, UCMJ, investigation, MAJ S thoroughly explored the victims' credibility, motives of appellant's chain of command, and questionable circumstances leading to the preferral of the charge and its specifications. Major S repeatedly tried to convince the trial counsel to dismiss the charges or support an administrative discharge of appellant in lieu of trial. The trial counsel refused because he was convinced appellant had committed forcible acts of sodomy against emotionally vulnerable victims. Appellant's defense team's ultimate advice to consider a guilty plea was

based on the evidence arrayed against him and the favorable terms of the pretrial agreement.

■ When more than one counsel represents an accused, we measure the competency and effectiveness of counsel by the combined efforts of the defense team. *United States v. Boone*, 39 M.J. 541, 543 (A.C.M.R.), *aff'd in part, rev'd in part on other grounds,* 49 M.J. 187 (1998); *see also Babbitt*, 26 M.J. at 158. Even if MAJ S labored under a conflict, CPT L, who knew nothing of the affair, did not. Appellant's assertion that CPT L did almost nothing for him is neither credible nor supported by the record. Captain L was thoroughly familiar with the facts of the case, researched and wrote two motions to dismiss, petitioned this court for extraordinary relief, and negotiated at length with the trial counsel to secure a favorable pretrial agreement with appellant's knowledge and cooperation. Captain L's advice to appellant was based on his independent review and analysis of the evidence. Moreover, it was CPT L who, after weighing the government's evidence, initially recommended that appellant consider a pretrial agreement with the government. Measuring the combined efforts of MAJ S and CPT L on behalf of appellant, it is difficult to imagine what more they could have done on his behalf to produce a more favorable result.

In sum, we are satisfied that appellant received effective assistance of counsel and that his pleas were voluntary and provident. *See United States v. Garcia*, 44 M.J. 496, 497–98 (1996) (citation omitted). The entire record fully supports appellant's sworn responses to the military judge during the *Care* inquiry and the stipulation of fact into which he entered. We are convinced appellant knowingly, intelligently, and voluntarily pleaded guilty because, as he told the military judge, "I know I'm guilty, Your Honor," and it was in his best interest to do so.

### *GORSKI ISSUE*

We also note that, as the offenses occurred before 1 April 1996, appellant is within the class of persons entitled to protection under *United States v. Gorski*, 47 M.J. 370 (1997). The 1996 amendments to Article 57(a)(1) and

**740**

Article 58b, UCMJ, 10 U.S.C. § 857(a)(1), may have been given effect in appellant's case despite the date of the charged offenses. On 12 June 1998, the convening authority denied appellant's 3 June 1998 request that he defer reduction in rank and forfeiture of all pay and allowances until he took initial action in appellant's case. The record is silent as to whether appellant actually suffered forfeiture of pay or reduction under the 1996 amendments. Under the law before the 1996 amendments, the UCMJ "only authorized forfeitures that were adjudged by a court-martial and subsequently approved by a convening authority. Moreover, the forfeitures adjudged only became effective from the date of the convening authority's action." *Gorski*, 47 M.J. at 371. The same restriction applied to any reduction in grade. *Id.* at 374.

### *DECISION*

We have considered appellant's third assignment of error and the matters he personally submitted under *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them to be without merit. The findings of guilty and the sentence are affirmed. The *Gorski* issue is referred to The Judge Advocate General for appropriate disposition. Accordingly, The Judge Advocate General will determine the amount of relief, if any, that is warranted, subject to any setoffs that may arise under law or regulations. There is no requirement that this matter be returned to the court.

Senior Judge MERCK and Judge CARTER concur.