CRAWFORD, Chief Judge
(dissenting):
I respectfully dissent from the majority’s creation of a per se rule of ineffectiveness that is contrary to Supreme Court precedent. Mickens v. Taylor, 535 U.S. 162, 172-73, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (noting that because there is no rule of per se ineffectiveness, an appellant must demonstrate that “conflict significantly affected counsel’s performance”). But cf. Nixon v. Florida, 857 So.2d 172 (Fla.2003)(defendant’s acquiescence in defense counsel’s strategy which was the functional equivalent of a guilty plea, regardless of its wisdom, was held to be per se ineffectiveness), cert. granted, — U.S. -, 124 S.Ct. 1509, — L.Ed.2d - (2004). This Court is, and should be, deeply concerned about an accused’s right to effective assistance of counsel and a fair trial. Nevertheless, to determine whether counsel has rendered ineffective assistance to an accused, we are bound by our own and Supreme Court precedent. This precedent dictates that ineffective assistance requires both deficient performance and prejudice. Because Appellant has demonstrated no prejudice in this case, I respectfully dissent from the lead opinion.
“In reviewing claims of ineffective assistance of counsel based on deficient representation, we must apply the two-prong test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).” United States v. Babbitt, 26 M.J. 157, 158 (C.M.A.1988).
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is rehable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052 (emphasis added). The Court added that “if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient *297 prejudice, which we expect will often be so, that course should be followed.” Id. at 697, 104 S.Ct. 2052 (emphasis added).
The type of conflict presented in this case is not unique to the military. In fact, there have been many federal cases addressing ineffectiveness where the client and attorney were allegedly involved in a related criminal endeavor. See, e.g., United States v. Cancilla, 725 F.2d 867 (2d Cir.1984)(attorney participated with client’s coconspirators in crime similar to client’s); Briguglio v. United States, 675 F.2d 81 (3d Cir.1982)(attorney under investigation by United States Attorney’s Office prosecuting client). To assess ineffectiveness in these cases, the courts have rejected a per se rule and, instead, have examined the record to determine if there was prejudice. Unlike the instant case, in none of the federal eases was there the mitigating presence of an independent counsel, or a guilty plea tested through the extensive providence inquiry required in military practice.
Appellant in the case at bar has failed to demonstrate any prejudice. Despite his admission of guilt to the charge of indecent assault, Appellant availed himself of a pretrial agreement which reduced the charges and limited the duration of the adjudged confinement. Indeed, Major S’s representation successfully gave Appellant the benefit of his bargain and, as the lower court noted, “it is difficult to imagine what more [the defense] could have done on [Appellant’s] behalf to produce a more favorable result.” United States v. Cain, 57 M.J. 733, 739 (A.Ct.Crim.App.2002). In addition, the pretrial agreement which dictated the outcome of the case was negotiated by Captain L, who was unaffected by Appellant’s relationship with Major S. The mitigating presence of an independent third party counsel who reviewed and endorsed the vehicle which secured Appellant’s fate at trial renders prejudice simply untenable. In sum, given the absence of any prejudice in this case, there simply cannot have been ineffective assistance.
Moreover, this Court has repeatedly emphasized the military judge’s obligation to ensure that guilty pleas are voluntary and pretrial agreements are well understood. Rule for Courts-Martial 910. See, e.g., United States v. King, 3 M.J. 458 (C.M.A.1977)(holding that the military judge must confirm at trial that the written plea agreement encompasses both parties’ understanding of the meaning and effect of the plea bargain). Indeed, “[t]he military justice system imposes even stricter standards on military judges with regards to guilty pleas than those imposed on federal civilian judges.” United States v. Petron, 58 M.J. 78, 81 (C.A.A.F.2003). Only after meeting this stringent prerequisite may a military judge pronounce the binding effect of the pretrial agreement on both parties. United States v. Lanzer, 3 M.J. 60, 62 (C.M.A.1977)(noting that pretrial agreements will be strictly enforced where the intention of the parties at the time of the agreement is clear). This Court’s exacting standards in this regard prompted the Judicial Conference of the United States to recommend that other federal courts require its judges to conduct a similar inquiry into plea agreements. Judicial Conference of the United States Committee on Rules of Practice and Procedure, Report of the Advisory Committee on Criminal Rules, 65 Crim. L. Rep. (BNA) 140 (May 5,1999).
The detailed providence inquiry in this case, informed by Appellant’s binding stipulation of fact, is abundantly clear that Appellant knowingly and willingly pleaded guilty to the charged offense, knowingly and willingly entered the pretrial agreement, and was indeed satisfied with the assistance of counsel that accompanied his decision to plead guilty and enter the pretrial agreement. See United States v. Redlinski, 58 M.J. 117, 119 (C.A.A.F.2003)(noting that this Court considers the context of the entire record to determine whether a plea was provident). The military judge questioned Appellant, in pertinent part, as follows:
MJ: Anyone force you to enter into this agreement?
ACC: No, Your Honor.
*298 MJ: Anyone made any promises to you that aren’t written into this agreement in an attempt to get you to plead guilty?
ACC: No, Your Honor.
MJ: ... Paragraph 4 [of the pretrial agreement] says that the offer to plead guilty originated with you; and, that no person made any attempt to force or coerce you into making this offer. That just means it was your idea. Was it?
ACC: Yes, it was, Your Honor.
MJ: Have you had enough time to discuss this agreement with both of your defense counsel?
ACC: I have, Your Honor.
MJ: Are you satisfied with their advice regarding this pretrial agreement?
ACC: I am, Your Honor.
MJ: And, again, I ask you, did you enter into the agreement of your own free will?
ACC: I did, Your Honor.
MJ: Did anybody force you to do this?
ACC: No, Your Honor.
MJ: You fully understand all of the terms and conditions [of the pretrial agreement] and how they are going to affect your case?
ACC: I do, Your Honor.
MJ: Are you satisfied [with your defense counsels’] advice with regard to your case?
ACC: I am, Your Honor.
MJ: Satisfied with them as your defense counsel?
ACC: Yes, Your Honor.
MJ: Are you pleading guilty voluntarily and of your own free will?
ACC: I am, Your Honor.
MJ: Anyone made any threat or tried in any way to force you to plead guilty?
ACC: No, Your Honor.
MJ: Sergeant Cain, I find that your plea of guilty is made voluntarily and with full knowledge of its meaning and effect.
I further find that you have knowingly, intelligently and consciously waived your rights against self-incrimination, to a trial of the facts by a court-martial and to be confronted by the witnesses against you.
Accordingly, your plea of guilty is provident. It is accepted.
Given this Court’s longstanding efforts to ensure that guilty pleas are sincere and voluntary, and that only legitimate, mutually-selected pretrial agreements are put into effect, this Court is remiss to reverse Appellant’s conviction — and in so doing negate his accepted guilty plea and rescind his binding pretrial agreement — in the absence of any prejudice.
Finally, even if Appellant had suffered prejudice, he affirmatively waived his right to conflict-free representation when he freely and deliberately entered into a relationship with his defense counsel. See United States v. Mezzanatto, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995)(establishing that an appellant may waive many of the most fundamental constitutional rights). “The determination of whether there has been an intelligent waiver ... [depends] upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The lower court made extensive findings of fact regarding the consensual, informed, and deliberate nature of Appellant’s relationship with Major S:
• Appellant was 33-years-old, a sergeant with more than 12 years of service, with a GT score of 112 and a two year associate’s degree.
• Appellant told several people that he continued the relationship only because he wanted defense counsel to continue to represent him. Appellant considered defense counsel to be an “excellent, dynamic, and aggressive” attorney, and believed that because counsel was gay, like Appellant, counsel would fight even harder on Appellant’s behalf. Appellant believed Major S was the best military defense counsel available.
*299 • Appellant never told defense counsel that he had any reservations about their relationship. Appellant testified at the hearing pursuant to United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), “[N]ot once did I protest what he was doing to me or what he had me do to him.”
Cain, 57 M.J. at 735. There was no doubt that Appellant wanted Major S to defend him, and did what he felt was necessary to secure Major S’s “excellent, dynamic, and aggressive” representation. Id. Indeed, “Appellant knew what he was doing when he made his choice.” Id. at 739. In short, through his calculated involvement with his defense counsel, Appellant waived his right to conflict-free representation.
For these reasons, I respectfully dissent from the lead opinion.